THE NEVADA DEPARTMENT OF WILDLIFE, A POLITI-
CAL SUBDIVISION OF THE STATE OF NEVADA,
WILL MOLINI, DIRECTOR OF THE NEVADA
DEPARTMENT OF WILDLIFE, IN HIS OFFICIAL
CAPACITY; THE NEVADA BOARD OF WILDLIFE
COMMISSIONERS, AN AGENCY OF THE STATE OF
NEVADA, AND KEITH LEE, ANDY LEITCH, STEVE
BOIES, BRUCE KENT, TINA NAPPE, JOHN S.
SWEETLAND AND GARY WEDDLE, COMMISSION-
ERS OF THE NEVADA BOARD OF WILDLIFE, IN
THEIR OFFICIAL CAPACITY, Appellants, v.
TERESA BENTZ, ROBERT A. BENTZ, THOMAS L.
BENTZ, DALLAS R. HOLBROOK, DON HOLBROOK,
DONALD INSKEEP, YVONNE M. LEE, ANGEL
SHERMAN, AND DAVID E. SHERMAN, Respond-
ents.

No. 20210

May 16, 1990 792 P.2d 28

*Brian McKay,* Attorney General, *Brian Chally,* Deputy Attorney General, Carson City, for Appellants.

*Cory & Bindrup* and *Jeff McColl,* Las Vegas; *David Hornbeck,* Reno, for Respondents.

*Sarah F. Bates,* San Francisco, CA for Amicus Curiae.

## OPINION

*Per Curiam:*

In February of 1989, the Nevada Board of Wildlife Commissioners (Commission) adopted General Commission Regulation No. 173 (GCR 173) which prohibited the collection of reptiles for commercial purposes. The district court granted the respondents a preliminary injunction forbidding the Nevada Department of Wildlife (NDOW) from enforcing GCR 173. We reverse the preliminary injunction issued against the appellants by the district court.

### FACTS

In 1983, the legislature amended NRS 501.379 to prohibit the sale of all Nevada wildlife except as allowed by statute or Commission regulation.[1] The term "wildlife" includes reptiles. *See* NRS 501.097.

In 1986, the Commission passed NAC 503.095 which states in pertinent part:

> The department [NDOW] will issue a permit authorizing a person to collect unprotected wildlife for commercial purposes with a seine, net, noose, trap or other device if, after an investigation is conducted, it is proved to the department that the collecting will not be detrimental to wildlife.

NDOW then granted permits to the respondents to collect and sell reptiles. NDOW expected the respondents to provide it with

---

[1]NRS 501.379 states in pertinent part:

Unlawful sale of wildlife or importation of game animals, game birds or game amphibians. It is unlawful for any person to sell, or expose for sale, to barter, trade or purchase, or attempt to sell, barter, trade or purchase, any species of wildlife, or parts thereof, except as provided in this Title or in a regulation of the commission. . . .

information so that it could determine whether the sales of reptiles would be deleterious to Nevada's wildlife. The respondents supplied NDOW with reports of the numbers of reptiles collected and anecdotal stories stating that the selling of reptiles was not harmful to wildlife in Nevada.

In January of 1989, the Commission, on the recommendation of NDOW, gave notice of its intent to adopt GCR 173 which provided that "[t]he possession or collection of reptiles for commercial purposes is prohibited." A hearing was held before the Commission in February of 1989 concerning GCR 173. The respondents protested its adoption. Environmentalists favored its adoption. The Commission adopted GCR 173.

In May of 1989, the respondents filed a complaint seeking a preliminary and permanent injunction preventing NDOW from enforcing GCR 173. The court granted the respondents a preliminary injunction, holding that: (1) NAC 503.095 requires NDOW to issue permits to sell unprotected wildlife unless such sales would be harmful to Nevada's wildlife; (2) the Commission failed to conduct an adequate investigation concerning the impact of reptile sales on the wildlife of Nevada; (3) GCR 173 gives protected status to reptiles which are unprotected; and (4) GCR 173 failed to protect and preserve wildlife for *economic* reasons pursuant to NRS 501.100(2).

The court required the respondents to post a $5,000 bond pending resolution of the case.

## *LEGAL DISCUSSION*

The first issue presented is whether the court erred in finding that GCR 173 was invalid because the Commission did not perform an adequate investigation concerning the impact of reptile sales on wildlife in Nevada as required by NAC 503.095. We hold that the court erred by putting the burden of proof on the Commission to show that selling reptiles is harmful to Nevada's wildlife. NAC 503.095 states:

> 1. The department will issue a permit authorizing a person to collect unprotected wildlife for commercial purposes . . . if, after an investigation is conducted, *it is proved to the department that the collecting will not be detrimental to wildlife.*

(Emphasis added.) The words "it is proved to the department" clearly indicate that a party seeking a permit to sell wildlife has the burden of proving to NDOW that such sales will not be deleterious to Nevada's wildlife before a permit will be issued to

it. The respondents provided NDOW and the Commission with reports on how many reptiles they collected, anecdotal stories of the great number of reptiles which live in Nevada, and unsupported assertions that reptile selling is not harmful to Nevada's wildlife. The respondents failed to prove to NDOW that reptile selling would not be harmful to Nevada's wildlife. Thus the court erred in holding that GCR 173 is invalid because the Commission failed to conduct an adequate investigation on the impact of reptile sales on Nevada's wildlife. The respondents, not the Commission or NDOW, had the duty to conduct an investigation which proved that selling reptiles would not harm Nevada's wildlife.

Additionally, NDOW has always placed the burden of proving that the sale of wildlife will not harm the environment on the party applying for a permit. The court should give great weight to an agency's interpretation of its own regulations. Department of Human Resources v. UHS of the Colony, Inc., 103 Nev. 208, 211, 735 P.2d 319, 320 (1987).

The second issue presented is whether the court erred in holding that GCR 173 is contrary to NRS 501.110 because it gives protected status to those reptiles classified as unprotected.[2] The term protected means that an animal may not be captured or killed. The term unprotected means that an animal may be captured or killed. GCR 173 does not confer protected status on unprotected reptiles. Anyone may still hunt unprotected reptiles. What is prohibited is a subset of hunting, namely, hunting in order to sell the reptile. Thus, the court erred in holding that by forbidding the *sale* of reptiles, the Commission gave protected status to those reptiles classified as unprotected.

Additionally, we note that the legislature has delegated to the Commission the power to prohibit the commercial taking of *unprotected* wildlife. *See* NRS 503.380. The legislature has historically distinguished between commercial and noncommercial use of wildlife. The legislature's distinction is rational. A commercial seller may well have a more devastating effect on Nevada's wildlife than a person who hunts for a hobby.

---

[2]NRS 501.110 states:

    1. For the purposes of this Title, wildlife shall be classified as follows:

    . . . .
    . . . .
    . . . .

    (d) Reptiles, which must be further classified as either protected reptiles or unprotected reptiles.

The third issue presented is whether the court erred in holding that GCR 173 fails to protect wildlife for economic reasons pursuant to NRS 501.100. NRS 501.100 states:

1. Wildlife in this state not domesticated and in its natural habitat is part of the natural resources belonging to the people of the State of Nevada.

2. The preservation, protection, management and restoration of wildlife within the state contribute immeasurably to the aesthetic, recreational and economic aspects of these natural resources.

We note that NRS 233B.090 states that there is a rebuttable presumption that a regulation by an administrative agency is valid. The court erred in failing to presume that GCR 173 was a valid regulation. Additionally, NRS 501.100 is a statement of policy which gives weight to both the aesthetic and recreational benefits of wildlife as well as to its economic uses. We hold that the court erred in giving too much weight to the commercial uses of wildlife and not enough weight to the recreational and aesthetic uses of wildlife. We also conclude that the court erred in failing to consider that there are *economic* benefits in preserving, protecting, and managing wildlife for aesthetic, recreational, and scientific reasons. Therefore, the court erred in holding that GCR 173 fails to protect wildlife for economic reasons pursuant to NRS 501.100.

The court erred in issuing a preliminary injunction forbidding NDOW from enforcing GCR 173. GCR 173 is a valid regulation. Thus, the respondents did not establish that they have a reasonable chance of winning on the merits of their case. Additionally, it is impossible to determine, absent credible scientific studies, what harm will result from the commercial sale of reptiles. Thus, the preliminary injunction issued could cause irreparable harm to Nevada's wildlife. Finally, although the respondents may suffer harm from the enforcement of GCR 173, the potential harm to the wildlife of Nevada outweighs harm to the respondents.

Accordingly, we reverse the order of the district court preventing NDOW from enforcing GCR 173, dissolve the preliminary injunction issued by the court, and remand the case for further proceedings consistent with this opinion.