ABDULLAH JIHAD ABDUL JAAMI,　　)
　　　　　　　　　　　　　　　　)
　　　　Petitioner/Appellant,　　)
　　　　　　　　　　　　　　　　)　Appeal No.
　　　　　　　　　　　　　　　　)　01-A-01-9609-CH-00425
VS.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　Davidson Chancery
　　　　　　　　　　　　　　　　)　No. 95-3539-II
ROBERT CONLEY, WARDEN, et al.,　)
　　　　　　　　　　　　　　　　)
　　　　Respondents/Appellees.　)

FILED

June 11, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

ABDULLAH JIHAD ABDUL JAAMI, #73179
Lake County Regional Prison
Route 1, Box 330
Tiptonville, Tennessee 38079
　　　　Pro Se/Plaintiff/Appellant

JOHN KNOX WALKUP
Attorney General and Reporter

PATRICIA C. KUSSMANN
Assistant Attorney General
404 James Robertson Parkway
Suite 2000
Nashville, Tennessee 37243
　　　　Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

A prisoner in the custody of the Department of Correction petitioned the chancery court for a Writ of Mandamus to compel the Department to change his security classification, so that he might be transferred to a minimum security annex or to a community corrections center. The chancellor dismissed the petition. We affirm.

## I.

In 1975, the petitioner Abdullah Jaami[1] was convicted of committing a rape while on parole from a conviction for another sexual offense. He received a sentence of sixty years, with parole eligibility after completion of 50% of his sentence. Mr. Jaami was sent to the Lake County Regional Correctional Facility, where he has been ever since. The Department of Corrections apparently had a policy at the time he was sentenced that allowed all inmates to be considered for minimum custody classification if they were within ten years of their earliest release date, and met certain other conditions.

In June of 1994, the above-mentioned policy was changed. The new policy (Admin. Pol. & Proc. of the Dept. Of Correction #404.07) did not permit the transfer of sex offenders to minimum custody until they were within ten years of the expiration of their sentences. Those convicted of other crimes could still be considered for reclassification if they were within ten years of their earliest release dates. The petitioner claimed that his scheduled classification review was deliberately

---

[1]In her affidavit, Faye Claud, the Manager of Sentence Information Services for the Department of Correction refers to the petitioner as Jerome S. Barrett aka Abdullah Jihad Abdul Jaami. Presumably the petitioner changed his name after he was sentenced.

delayed until the new policy went into effect, and that he was therefore unfairly denied the possibility of being granted minimum custody status and placement.

On November 9, 1995, Mr. Jaami filed a Petition in the Chancery Court of Davidson County for a Writ of Mandamus, for a Declaratory Order, and for Injunctive Relief. He named as respondents the Warden of the Lake County Regional Prison, and several other Department of Corrections officers and employees, including the Manager of its Sentence Information Services, the Director and Assistant Director of the Department's Classification Programs, and two counselors at the Lake County facility.

The petition asked the court among other things to declare the Department's 1994 policy change to be unconstitutional because lacking a rational basis, and to order the respondents to conduct an immediate reclassification which would take into account his unblemished institutional record. The chancellor dismissed the petition, finding the policy at issue not to be in violation of any constitutional provision. The chancellor also found that the inmate's classification was a matter of internal state regulation, and that the court was therefore without jurisdiction to hear his claim for declaratory relief. This appeal followed.

## II. Constitutional Issues

The appellant has designated forty-seven issues on appeal, and grouped them under three different headings. In order to eliminate redundancy, we will treat the issues under a slightly different organizational scheme, and consolidate them into Constitutional issues and Jurisdictional issues. First we will deal with the Constitutional issues.

## a. The Ex Post Facto Argument

The appellant contends that the Department's policy is unconstitutional as it applies to him because it amounts to *ex post facto* punishment, forbidden under both the U.S.and Tennessee Constitutions.  In the case of *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed 2d 17, 22 (1991) the United States Supreme Court said "[t]he ex post facto provision forbids the Congress and the State to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes an additional punishment to that then prescribed."  The Tennessee Supreme Court has defined one type of *ex post facto* law as that which "changes punishment or inflicts a greater punishment than the law annexed to the crime when committed."  *Miller v. State,* 584 S.W.2d 758, 761 (1979).  Since the length of Mr. Jaami's sentence was unchanged by the new regulation, the chancellor concluded that it could not be considered an *ex post facto* law.

The relevant case law appears to support the chancellor's reasoning. Eligibility for parole consideration, for example, is normally part of the law annexed to the crime when committed, and thus a change of parole eligibility standards to the possible detriment of prisoners sentenced under the earlier law may implicate *ex post facto* concerns.  See *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn. App. 1995).  But also see *California Dept of Corrections v. Morales,* ___ U.S. ___, 115 S. Ct. 1597, 131 L.Ed.2d 588 (1995).

In the *Weaver* case, mentioned above, the United States Supreme Court held that a Florida law which decreased the rate at which a prisoner could earn good time credits, and which was enacted after his conviction, constituted an *ex post facto* violation as to him, because it effectively extended the length of his sentence.  450 U.S. at 33, 101 S.Ct. At 967, 67 L.Ed.2d at 26.

Though regulations for the classification of prisoners normally take into account the inmate's crime and sentence, their primary purpose is not punishment, but security. We do not therefore believe that such regulations are "part of the law annexed to the crime when committed." There appears to be no Tennessee case where a change in the security classification of a prisoner has been found to be in violation of the *ex post facto* prohibition. The need for correctional officials to remain in control of their institutions may explain that negative result.

> "A state prison inmate has no right to a particular classification under state law, and prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status."

60 Am.Jur. 2d *Penal and Correctional Institutions* § 34 (1979).

Though the "broad discretion," referred to above cannot mean unlimited discretion, we conclude that no *ex post facto* violation has resulted from the department's decision to make a change in the regulations for the security classifications of sex offenders.

**b. Equal Protection**

The appellant also contends that the change of regulation treats sex offenders differently from other offenders, makes inequitable distinctions between two different classes of sex offender, and lacks a rational basis. We do not believe, however, that Mr. Jaami has stated a constitutional claim under the equal protection clause of the Fourteenth Amendment.

The equal protection clause requires that persons similarly situated receive the same treatment under the law. Laws classifying individuals for disparate treatment will be upheld if they can be shown to be "rationally related to a legitimate state interest" unless they affect a fundamental constitutional right, or create a

classification based upon "inherently suspect distinctions such as race, religion or alienage." *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

The appellant has not shown that he has been deprived of a fundamental constitutional right, nor that he has been treated as a member of any suspect class. Treating prisoners differently based on their offenses does not violate the equal protection clause if the treatment is related to a legitimate state interest. As the trial court observed,

> "It was the obvious judgment of the legislature and the Department of Corrections that sex offenders, especially sex offenders who commited more serious crimes and have more than ten years remaining on their sentence, are more likely to be a security threat. As a result, such offenders are only eligible for minimum security if they meet several additional criteria enunciated by the Board. This concern about the additional risk posed by serious sex offenders such as the petitioner is reasonable, and the steps taken to protect against this risk is (sic) clearly supported by a rational basis in fact."

As for the alleged distinction between those sentenced under the harsher provisions of the earlier law, and those sentenced later, the disputed regulation is applied to all sex offenders in the same manner, so it would not seem to be susceptible to an equal protection challenge at all. However Mr. Jaami contends that the regulation has a disparate effect on the two classes of sexual offender, and we will concede, for the sake of argument, that this creates equal protection concerns.

However the challenged regulation will pass constitutional muster if it can be shown to have a rational relationship to any legitimate state interest. Mr. Jaami's argument is that there can be no rational reason for linking the eligibility of sexual offenders for minimum security placement to the expiration dates of their sentences rather than to their release eligibility dates.

He claims that under the regulation, prisoners like himself who received longer sentences under the prior law than would be possible for those later convicted of the same offenses become eligible for relaxation in the conditions of their confinement later than do more recent offenders.  He argues that the more recent offenders pose the greater security risk, because they have not yet had enough time to reflect on the wrongfulness of their acts, or to prove that they can abide by the terms of their punishment.

His analysis may well be correct, but we cannot conclusively state that it is, nor can we state that the regulation has no rational basis. It appears to us that its purpose is to protect the public, and its effect is to keep all those convicted of sexual crimes confined for a longer period under conditions of rigorous security, regardless of the lengths of their sentences.

It is possible that a regulation that calls for a more particularized inquiry into the circumstances and institutional record of each individual offender would serve the same purpose, and would lead to a more equitable result for those sentenced under the prior law. But a regulation or statute is not deemed to be irrational just because a more precisely focused one could have been drafted. See *Massachusetts Board of Retirement v. Murgia*, (Marshall, J., dissenting) 427 U.S. 307, 316, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).  We therefore believe that Mr. Jaami's equal protection argument must also fail.

### III. Jurisdictional Issues

The trial court dismissed that portion of the appellant's petition that asked for a declaratory judgment under the Uniform Administrative Procedures Act (UAPA), Tenn. Code Ann. § 4-5-322(h).  The court held that it did not have jurisdiction

to review the regulation in question because Tenn. Code Ann. § 4-5-102(10)(A) excludes from the provisions of the UAPA "[s]tatements concerning only the internal management of state government and not affecting private rights, privileges, or procedures available to the public."

The chancellor also found there to be no evidence that the petitioner had first sought a declaratory order from the Department of Correction or that he exhausted his administrative remedies, as would be required under the UAPA. In his reply brief, Mr. Jaami has submitted as exhibits ten unauthenticated documents, which appear to show a lengthy course of administrative appeals on the same questions that he raised in his petition.

However in view of our finding that none of Mr. Jaami's theories entitle him to relief, and our belief that the trial court was correct in holding that regulations for the classification of prisoners do not fall within the ambit of the UAPA, we pretermit the question of whether Mr. Jaami exhausted his administrative remedies before filing his petition.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE