IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 27, 2000

## JEFF UTLEY v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 98-2578-II     Carol L. McCoy, Chancellor**

------

**No. M1999-01412-COA-R3-CV - Filed May 1, 2003**

------

This appeal involves a dispute between a prisoner and the Department of Correction regarding his punishment for two unrelated disciplinary offenses. On both occasions, the Department extended the prisoner's release eligibility date in accordance with versions of Tenn. Dep't Corr. Policy Index No. 502.02 issued after he committed the crimes for which he was incarcerated. The prisoner filed a complaint in the Chancery Court for Davidson County asserting that the Department's application of the later version of the policy to him violated the Ex Post Facto Clause of the United States Constitution. The trial court granted the Department's Tenn. R. Civ. P. 12.02(6) motion, and the prisoner has appealed. We have determined that the prisoner's complaint fails to state a colorable ex post facto claim under either the federal or state constitution. Accordingly, we affirm the dismissal of the prisoner's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Jeff Utley, Henning, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; and Abigail Turner, Assistant Attorney General, for the appellees, Tennessee Department of Correction and Donal Campbell.

**OPINION**

**I.**

In 1986, Jeffery A. Utley was involved in an armed robbery that resulted in a death. On March 23, 1987, he was sentenced by the Criminal Court for Davidson County to two concurrent twenty-year sentences for second degree murder and armed robbery.

When Mr. Utley committed his crimes in 1986, persons convicted as Range I offenders became eligible to be considered for parole after serving thirty percent of the actual sentence

imposed by the court. Tenn. Code Ann. § 40-35-501(c) (1982) (repealed 1989).[1]  However, the eligibility date established by Tenn. Code Ann. § 40-35-501(c) was contingent on a prisoner's disciplinary record while incarcerated. Tenn. Code Ann. § 40-35-501(h) stated that "[t]he release eligibility date provided in this section shall be the earliest date a defendant convicted of a felony shall be eligible for release status; such date shall be conditioned on the defendant's good behavior while in prison." Tenn. Code Ann. § 40-35-501(h) also provided that

> For a violation of any of the rules of the department of correction or the institution in which the defendant is incarcerated or while on any release program other than parole, the commissioner of correction or his designee may defer the release eligibility date so as to increase the total amount of time a defendant must serve before becoming eligible for release status.  This release may, in the discretion of the commissioner, be in any amount of time not to exceed the full sentence originally imposed by the court and shall be imposed pursuant to regulations promulgated by the commissioner of correction and which give notice of the length of discretionary increases that may be imposed for a violation of each of the rules of the department or institution.[2]

The policies regarding the penalties for prison disciplinary offenses that were in effect in January 1986 when Mr. Utley committed his crimes had been issued by the Commissioner of Correction on January 1, 1982.  They provided that "[t]he most severe punishments which can be imposed for the commission of a disciplinary offense are the loss of sentence credits and the imposition of punitive segregation."[3]  Tenn. Dep't Corr. Policy Index No. 502.02(V) (1982).

Mr. Utley escaped from the Department's custody on October 22, 1989.  He was soon recaptured and was criminally prosecuted and convicted for escape.  On May 24, 1990, he received another one-year sentence to be served consecutively to his 1987 sentences.  In addition, the Department charged him with the disciplinary infraction of escape.  Pursuant to a revised version of

---

[1] The 1982 version of Tenn. Code Ann. § 40-35-501 was part of the Tennessee Sentencing Reform Act of 1982. Act of Apr. 8, 1982, ch. 868, 1982 Tenn. Pub. Acts 556.  It was rewritten in 1989 when the Tennessee General Assembly recodified Tennessee's criminal laws.  Act of May 24, 1989, ch. 591, 1989 Tenn. Pub. Acts 1169.

[2] Both second degree murder and armed robbery were Class X crimes in 1986.  Prior to July 1, 1982, the parole eligibility for persons convicted of a Class X crime was governed by Tenn. Code Ann. § 40-28-301(h)(1) (1982) (repealed 1985).  This statute was virtually identical to Tenn. Code Ann. § 40-35-501(h).  However, as part of its efforts to relieve prison overcrowding, the Tennessee General Assembly determined that beginning on July 1, 1982, the release classification eligibility date for Class X offenders would be determined under Tenn. Code Ann. § 40-35-501(h).  Act of Apr. 8, 1982, chap. 868 § 1, Section 40-43-601, 1982 Tenn. Pub. Acts 556, 585.  The Tennessee General Assembly eventually repealed Tenn. Code Ann. § 40-28-301 in 1985 when it recodified Tennessee's criminal laws.  Act of Dec. 5, 1985, ch. 5, § 7, 1985 Tenn. Pub. Acts (1st Extraordinary Sess.) 22, 23.

[3] The Commissioner issued a revised version of Policy No. 502.02 on August 7, 1986 containing the same provision. Tenn. Dep't Corr. Policy Index No. 502.02(V) (1986).

Policy No. 502.02 that had been issued on February 15, 1989, the Department extended his parole eligibility date from thirty to fifty percent of his effective sentence for his 1987 convictions.[4]

Mr. Utley objected to the Department's decision to base his punishment on the 1989 version of Policy No. 502.02 because he believed it provided for a harsher punishment than the policy that had been in effect when he committed his crimes. Accordingly, he filed a declaratory judgment action in the United States District Court for the Middle District of Tennessee asserting that the Department's application of the policy to him violated the Ex Post Facto Clause of the United States Constitution.[5] In April 1996, a United States Magistrate Judge filed a report and recommendation concluding that the application of the 1989 version of Policy No. 502.02 to Mr. Utley violated U.S. Const. art. I, § 10, cl. 1 and recommending that Mr. Utley "be awarded injunctive relief to reinstate his eligibility date as provided in his original sentence." *Utley v. Rees*, No. 3:92-979, slip op. at 10 (M. D. Tenn. Apr. 29, 1996). For reasons not readily ascertained, the United States District Court rejected the magistrate judge's report and granted the Commissioner of Correction's motion to dismiss.

In March 1997, while *Utley v. Rees* was pending on appeal, Mr. Utley and another prisoner got into a scuffle with four correction officers that resulted in physical injury. As a result, he was charged with the disciplinary offense of assault. Mr. Utley was placed in involuntary administrative segregation and was later transferred to Brushy Mountain State Prison.[6] On April 22, 1997, the Department, now relying on the 1996 version of Policy 502.02, extended Mr. Utley's parole eligibility date from fifty percent to eighty percent of the effective sentence for his 1987 convictions.[7]

In September 1997, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of Mr. Utley's complaint in *Utley v. Rees*, but on different grounds than those relied on by the District Court. The United States Court of Appeals held that Mr. Utley should have filed a

---

[4]The Commissioner issued a revised version of Policy No. 502.02 on February 15, 1989. The 1989 revision of Policy No. 502.02(V)(E) provided:

> In all cases in which an inmate is found guilty of the disciplinary offense of escape, including escape from custody and failure to return from a pass or furlough, in addition to any other punishment imposed, the offender's parole or release eligibility date shall be extended by adding thereto an additional twenty percent (20%) of the offender's original maximum sentence, or by extending the inmate's parole or release eligibility date to the sentence expiration date, whichever is less. . ..

[5]U.S. Const. art. I, § 10, cl. 1.

[6]*Utley v. Rose*, 55 S.W.3d 559, 560 (Tenn. Ct. App. 2001).

[7]The Commissioner issued a revised version of Policy No. 502.02 on November 15, 1996. The 1996 revision of Policy No. 502.02(VI)(E) provided:

> Based on the seriousness of the incident, cases in which an inmate is found guilty of a disciplinary offense that resulted in physical injury to an employee, volunteer or visitor that requires medical treatment, in addition to any other punishment imposed, the offender's parole or release eligibility date may be extended by adding thereto an additional up to thirty percent (30%) of the offender's original maximum sentence, or by extending the inmate's parole or release eligibility date to the sentence expiration date, whichever is less . . ..

petition for writ of habeas corpus and, therefore, that his complaint should be dismissed because he had failed to demonstrate that he had exhausted his remedies in state court. *Utley v. Rees*, 124 F.3d 201, 1997 WL 584248 (Table, 6th Cir. 1997).

In August 1998, Mr. Utley filed this suit in the Chancery Court for Davidson County alleging that the application of the 1989 version of Policy No. 502.02 to him violated the Ex Post Facto Clause of the United States Constitution. His initial complaint dealt with his 1990 escape offense; however, in April 1999, the trial court permitted him to file an amended complaint that included a challenge to the extension of his release eligibility date stemming from the 1997 assault offense pursuant to the 1996 version of Policy No. 502.02. The Department responded with its customary, non-specific Tenn. R. Civ. P. 12.02(6) motion.[8] On July 27, 1999, the trial court granted the Department's motion and dismissed Mr. Utley's complaint after concluding that "since policy no. 502.02 was in effect prior to Plaintiff's escape in 1990, there was no *ex post facto* violation."[9] Mr. Utley has appealed that decision.

**II.**

A motion to dismiss a complaint for failure to state a claim for which relief can be granted tests the legal sufficiency of the plaintiff's pleading. *Givens v. Mullikin*, 75 S.W.3d 383, 406 (Tenn. 2002); *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The motion requires the court to review the complaint alone, *Mitchell v. Campbell*, 88 S.W.3d 561, 564 (Tenn. Ct. App. 2002), and to look to the complaint's substance rather than its form. *Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. Ct. App. 1995). Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief, *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002) or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts. *Davis v. The Tennessean*, 83 S.W.3d 125, 127 (Tenn. Ct. App. 2001); *Pendleton v. Mills*, 73 S.W.3d at 120. Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must

---

[8]Tenn. R. Civ. P. 7.02(1) requires motions to "state with particularity the grounds therefor." During this period of time, the Office of the Attorney General regularly filed Tenn. R. Civ. P. 12.02(6) motions that did not state their grounds with the particularity required by Tenn. R. Civ. P. 7.02(1). Rather, it would include these grounds in a separate memorandum of law accompanying the motion. Including the grounds for a motion in a separate memorandum of law does not satisfy the specificity requirements in Tenn. R. Civ. P. 7.02(1) because these memoranda, by operation of Tenn. R. App. P. 24, do not become part of the appellate record. *See, e.g., Hickman v. Tennessee Bd. of Paroles,* 78 S.W.3d 285, 287 n.2 (Tenn. Ct. App. 2001); *Pendleton v. Mills,* 73 S.W.3d 115, 119 n.7 (Tenn. Ct. App. 2001); *Robinson v. Clement,* 65 S.W.3d 632, 635 n.2 (Tenn. Ct. App. 2001).

[9]The order did not address Mr. Utley's challenge to the punishment he received for the assault infraction, even though the trial court had permitted Mr. Utley to amend his complaint to include this infraction as well as the earlier escape infraction. The trial court never corrected this oversight. Accordingly, the trial court's July 27, 1999 memorandum and order is not a final, appealable order because it does not resolve all the claims between all the parties. Rather than remanding this case to the trial court for the entry of a final order, we have determined that the proper course is to waive the finality requirement in accordance with Tenn. R. App. P. 2 and to address the claims with regard to Mr. Utley's escape infraction. Our reasoning with regard to the escape infraction applies equally to his later assault infraction.

construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts. ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 5-6(g), at 254 (1999). We must likewise review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); *Stein v. Davidson Hotel* Co., 945 S.W.2d at 716.

## III.

We begin our discussion with a review of two basic and potentially competing principles that frame our analysis of Mr. Utley's constitutional claim. The first principle is that maintaining institutional order and discipline in prison is an essential, compelling governmental interest. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S. Ct. 1861, 1878 (1979); *Kikumura v. Hurley*, 242 F.3d 950, 962 (10th Cir. 2001); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996). The administration of a prison is an extraordinarily difficult undertaking, *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S. Ct. 2963, 2980 (1974), and the day-to-day operation of a penal facility is not susceptible to easy solutions. *Bell v. Wolfish*, 441 U.S. at 547, 99 S. Ct. at 1878.

The operation of prisons has been entrusted to the Executive and Legislative Branches of government and is within the province and professional expertise of correction officials. *Pell v. Procunier*, 417 U.S. 817, 827, 94 S. Ct. 2800, 2806 (1974); *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S. Ct. 1800, 1807 (1974); *Utley v. Rose*, 55 S.W.3d at 563. The courts accord wide-ranging deference to correction officials in adopting and administering policies that, in the officials' judgment, are needed to preserve internal order and discipline and to maintain institutional security, *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126, 97 S. Ct. 2532, 2538 (1977); *Bell v. Wolfish*, 441 U.S. at 548, 99 S. Ct. at 1879; *Jaami v. Conley*, 958 S.W.2d 123, 125 (Tenn. Ct. App. 1997) (recognizing prison officials' broad authority regarding prisoner classification). Accordingly, the courts consistently decline to substitute their judgment for that of prison officials when it comes to difficult and sensitive matters of prison administration. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353, 107 S. Ct. 2400, 2407 (1987).

Preserving institutional order and discipline may require prison officials to adopt rules or policies that limit or reduce the constitutional rights retained by prisoners. *Bell v. Wolfish*, 441 U.S. at 546, 99 S. Ct. at 1878; *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998); *McLaurin v. Morton*, 48 F.3d 944, 948 (6th Cir. 1995). Prison officials must have the authority to discipline prisoners for violating these rules and policies. *Garrity v. Fiedler*, 41 F.3d 1150, 1153 (7th Cir. 1994); *Turner v. Johnson*, 46 F. Supp. 2d 655, 663-64 (S.D. Tex. 1999). Accordingly, disciplinary proceedings involving infractions of prison rules and policies are within the expected scope of a prisoner's sentence. *Sandin v. Conner*, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301 (1995).

The second principle is that prisoners do not shed all their constitutional rights at the prison gates. *Wolff v. McDonnell*, 418 U.S. at 555, 94 S. Ct. at 2974. While lawful incarceration brings about a necessary withdrawal of many privileges and rights, *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 125, 97 S. Ct. at 2537; *Price v. Johnston*, 334 U.S. 266, 285, 68 S. Ct. 1049, 1060 (1948), prisoners retain a narrow range of constitutionally protected liberty and

property interests. *Hudson v. Palmer*, 468 U.S. 517, 530, 104 S. Ct. 3194, 3202 (1984); *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864, 869 (1983). Thus, when a prison rule or policy offends a fundamental constitutional guarantee, the courts must discharge their duty to protect a prisoner's basic constitutional rights. *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987); *Utley v. Rose*, 55 S.W.3d at 563 (recognizing that courts may intervene when violations of a prisoner's constitutional rights have been committed "under the cloak of disciplinary or administrative" proceedings).

There is no dispute that the Ex Post Facto Clauses of the federal and state constitutions apply to prisoners in Tennessee's penal institutions. The right not to be subjected to ex post facto laws is not one of the constitutional rights that prisoners lose when they are imprisoned for crime. However, neither the federal nor the state Ex Post Facto Clause should be interpreted to require or even permit the courts to micromanage the endless array of legislative or administrative adjustments to parole policies and procedures. *California Dep't of Corr. v. Morales*, 514 U.S. 499, 508, 115 S. Ct. 1597, 1603 (1995). The courts must provide prison officials with due flexibility to fashion parole policies and procedures that address the problems associated both with confinement and with release. *Garner v. Jones*, 529 U.S. 244, 252, 120 S. Ct. 1362, 1368 (2000).

## IV.

The repudiation of ex post facto laws, which traces its lineage to the Corpus Juris Civilis compiled during the reign of the Emperor Justinian, became incorporated into the English common law in the thirteenth century.[10] By the eighteenth century, the prohibition against ex post facto laws had taken on a natural law quality.[11] In the mid-eighteenth century, Blackstone characterized them as "cruel and unjust."[12]

The Framers included two ex post facto clauses in the United States Constitution, one directed at the federal government,[13] and the other directed at the states.[14] They took this unusual step not only in response to the British Parliament's practice of passing ex post facto laws, *Carmell v. Texas*, 529 U.S. 513, 524 n.13, 120 S. Ct. 1620, 1628 n.13 (2000); *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 389 (1798) (referring to a number of well-known instances where Parliament enacted ex post facto laws), but also in response to the abuses of legislative power by many state legislatures during the period of "democratic despotism" following the Revolution. GORDON S. WOOD, THE CREATION OF THE AMERICAN REPUBLIC 1176-1787, at 403-07 (1969); Robert W. Scheef, *"Public Citizens" and the Constitution: Bridging the Gap Between Popular Sovereignty and Original Intent*, 69 Fordham

---

[10] Elmer E. Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence*, 20 Minn. L. Rev. 775, 775-76 (1936).

[11] THE FEDERALIST No. 44, at 228 (J. Madison) (Max Beloff ed. 1987) (characterizing ex post facto laws as "contrary to the first principles of the social compact and to every principle of sound legislation"); Suzanna Sherry, *The Founders' Unwritten Constitution*, 54 U. Chi. L. Rev. 1127, 1157 (1987).

[12] 1 WILLIAM BLACKSTONE, COMMENTARIES *46.

[13] U.S. Const. art I, § 9, cl. 3.

[14] U.S. Const. art. I, § 10, cl. 1.

L. Rev. 2201, 2214-17 (2001). Alexander Hamilton described these clauses as "perhaps greater securities to liberty and republicanism than any . . . [the United States Constitution] contains."[15]

By the late eighteenth century, the phrase "ex post facto law" had become a term of art with an established meaning. *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S. Ct. 2715, 2719 (1990). In the United States Supreme Court's first case involving the Ex Post Facto Clause, Justice Samuel Chase provided the following description of four categories of laws that violate the Ex Post Facto Clause:

> First, every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. Second, every law that aggravates a crime, or makes it greater than it was, when committed. Third, every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. Fourth, every law that alters the legal rules of evidence, [to permit] less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Calder v. Bull*, 3 U.S. at 390-91.[16] These laws have one thing in common. In each instance, the government refuses, after the fact, to play by its own rules and alters those rules to its own advantage. *Carmel v. Texas*, 529 U.S. at 533, 120 S. Ct. at 1633. Thus, the Ex Post Facto Clauses are designed to maintain the status quo between the government and a prisoner from the time of the prisoner's original offense, *Watkins v. Cross*, 566 N.W.2d 431, 436 (S.D. 1997) (Sabers, J., dissenting), and to prevent the enactment of arbitrary and vindictive laws. *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct. 960, 964 (1981).

Tennessee's original constitution contained a prohibition against ex post facto laws.[17] Except for minor changes in punctuation, every subsequent version of our constitution has contained the same prohibition. Thus, Tenn. Const. art. I, § 11 currently provides: "That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of free Government; whereas no Ex post facto law shall be made."

Despite the substantial similarities between Tenn. Const. art. I, § 11 and the Ex Post Facto Clauses in the United States Constitution, the Tennessee Supreme Court has concluded that the Ex Post Facto Clause in the Constitution of Tennessee has a broader reach that its federal counterparts.

---

[15] THE FEDERALIST No. 84, at 437-38 (A. Hamilton) (Max Beloff ed. 1987).

[16] The Tennessee Supreme Court has adopted Justice Chase's description of laws that run afoul of the Ex Post Facto Clause. *Davis v. Beeler*, 185 Tenn. 638, 653, 207 S.W.2d 343, 349 (1947).

[17] Tenn. Const. of 1796, art. XI, § 11 provided: "That laws made for the punishment of acts committed previous to the existence of such laws and by them only declared criminal are contrary to the principles of free government; wherefore no *ex post facto* law shall be made." 6 FRANCIS N. THORPE, THE FEDERAL AND STATE CONSTITUTIONS, COLONIAL CHARTERS, AND OTHER ORGANIC LAWS OF THE STATES, TERRITORIES, AND COLONIES 3422 (1909).

*Miller v. State*, 584 S.W.2d 758, 761 (Tenn. 1979) (invalidating the retroactive application of a statute on ex post facto grounds even though the United States Supreme Court had upheld the retroactive application of a virtually identical statute). While a state constitutional provision may provide greater protection than its federal counterpart, *Van Tran v. State*, 66 S.W.3d 790, 801 (Tenn. 2001); *Leech v. American Booksellers Ass'n, Inc.*, 582 S.W.2d 738, 745 (Tenn. 1979), Tennessee's courts are bound by the United States Supreme Court's interpretation of the United States Constitution. *State v. Carruthers*, 35 S.W.3d 516, 561 (Tenn. 2000); *McNabb v. Tennessean Newspapers, Inc.*, 55 Tenn. App. 380, 391, 400 S.W.2d 871, 876 (1965).

We must construe U.S. Const. art. I, § 10, cl. 1 consistently with the opinions of the United States Supreme Court. The United States Constitution supplies the minimum level of constitutional protections for personal rights and freedoms. *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81, 100 S. Ct. 2035, 2040 (1980); *Oregon v. Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 1219 (1975); *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002); *City of White House v. Whitley*, 979 S.W.2d 262, 268 (Tenn. 1998). Accordingly, we must strike down a statute, rule or policy that runs afoul of U.S. Const. art. I, § 10, cl. 1 even if it is not contrary to Tenn. Const. art. I, § 11 as construed by the Tennessee Supreme Court.

Laws, rules, or policies[18] that violate the Ex Post Facto Clauses of the federal and Tennessee constitutions have two characteristics. First, they must be truly retroactive – that is, they must apply to events occurring before their enactment. *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S. Ct. 891, 896 (1997); *State v. Ricci*, 914 S.W.2d 475, 480 (Tenn. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn. Ct. App. 1995). A statute, rule, or policy is retroactive in the ex post facto sense if it changes the legal consequences of acts completed before its effective date. *Weaver v. Graham*, 450 U.S. at 31, 101 S. Ct. at 965. Second, they must disadvantage the affected person either by altering the definition of criminal conduct or by increasing the punishment for the criminal conduct. *Lynce v. Mathis*, 519 U.S. at 441, 117 S. Ct. at 896; *California Dep't of Corr. v. Morales*, 514 U.S. at 506 n.3, 115 S. Ct. at 1602 n.3; *State v. Pearson*, 858 S.W.2d 879, 882 (Tenn. 1993). The heart of the Ex Post Facto Clauses bars the application of laws, rules, or policies that change the punishment and inflict greater punishment than the law annexed to the crime when it was committed. *Johnson v. United States*, 529 U.S. 694, 699, 120 S. Ct. 1795, 1800 (2000).

A great bulk of ex post facto jurisprudence has involved claims that a new statute, rule, or policy has inflicted greater punishment than the law annexed to the crime when it was committed. *Lynce v. Mathis*, 519 U.S. at 441, 117 S. Ct. at 895. Determining whether a particular statute, rule, or policy increases criminal punishment is often a close question. *Lynce v. Mathis*, 519 U.S. at 450, 117 S. Ct. at 900 (Thomas, J., concurring); 2 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE

---

[18]The Ex Post Facto Clauses do not apply just to the Legislative Branch. They also apply to rules, regulations, or policies enacted by the Executive Branch exercising delegated legislative power, *Smith v. Scott*, 223 F.3d 1191, 1193-94 (10th Cir. 2000); *Prater v. United States Parole Comm'n*, 802 F.2d 948, 953-54 (7th Cir. 1986), as long as they have the force and effect of law. *Griggs v. Maryland*, 263 F.3d 355, 359 (4th Cir. 2001); *Miller v. Mitchell*, 25 S.W.3d 658, 663 (Mo. Ct. App. 2000). Thus, administrative rules and policies may be subject to the Ex Post Facto Clauses' prohibitions. *Garner v. Jones*, 529 U.S. at 255, 120 S. Ct. at 1370. Policy changes that simply clarify how an Executive Branch agency exercises pre-existing discretionary authority do not run afoul of the Ex Post Facto Clauses. *D'Joy v. New York State Div. of Parole*, 127 F. Supp. 2d 433, 439 (S.D.N.Y. 2001); *Jaami v. Conley*, 958 S.W.2d at 125-26 (declining to set aside discretionary prisoner classification policies).

ON CONSTITUTIONAL LAW § 15.9(b), at 677 (3d ed. 1999) ("NOWAK & ROTUNDA"). There is no single formula for identifying which statute, rule, or policy will survive an ex post facto challenge. *Garner v. Jones*, 529 U.S. at 252, 120 S. Ct. at 1368; *Kaylor v. Bradley*, 912 S.W.2d at 732. The analysis requires an assessment of objective factors. *Lynce v. Mathis*, 519 U.S. at 442-44, 117 S. Ct. at 896-97; 2 NOWAK & ROTUNDA, § 15.9(b), at 677-78.

The danger that vindictiveness will cause disfavor of certain persons after-the-fact is present in the parole context. *Garner v. Jones*, 529 U.S. at 253, 120 S. Ct. at 1369. Parole eligibility is a facet of a criminal sentence, *Warden v. Marrero*, 417 U.S. 653, 661-64, 94 S. Ct. 2532, 2537-39 (1974); *In re Jackson*, 703 P.2d 100, 108 (Cal. 1985), and thus the statutes and regulations governing parole eligibility are considered to be part of the law annexed to a crime when it is committed. *Weaver v. Graham*, 450 U.S. at 32-33, 101 S. Ct. at 966; *Jaami v. Conley*, 958 S.W.2d at 125; *Kaylor v. Bradley*, 912 S.W.3d at 732. Accordingly, a change in a statute, rule, or policy that governs the parole or early release of prisoners may, in some instances, violate the Ex Post Facto Clauses, *Garner v. Jones*, 529 U.S. at 250, 120 S. Ct. at 1367; *Lynce v. Mathis*, 519 U.S. at 445, 117 S. Ct. at 898; *Weaver v. Graham*, 450 U.S. at 32, 101 S. Ct. at 966, but only insofar as it retroactively increases the extent of the punishment that could have been imposed on the day the prisoner committed the underlying crime. 2 NOWAK & ROTUNDA, § 15.9(b), at 678 n.67.

The bulk of the ex post facto analysis focuses on the effect of the new statute, rule, or policy on the prisoner's sentence. *Lynce v. Mathis*, 519 U.S. at 444, 117 S. Ct. at 897. A new statute, rule, or policy will be deemed to increase punishment if it effectively postpones a prisoner's initial release eligibility date. *Garner v. Jones*, 529 U.S. at 250, 120 S. Ct. at 1367; *California Dep't of Corr. v. Morales*, 514 U.S. at 507, 115 S. Ct. at 1602. To prevail with an ex post facto claim, a prisoner must show more than a speculative or attenuated possibility that the new statute, rule, or policy may result in more time in prison. *California Dep't of Corr. v. Morales*, 514 U.S. at 509, 115 S. Ct. at 1603; *Wilson v. State*, 980 S.W.2d 196, 199-200 (Tenn. Ct. App. 1998). Rather, a prisoner must show that, as applied to his or her own sentence, the retroactive application of the new statute, rule, or policy either will result in a longer period of incarceration or creates a significant risk of increasing the period of his or her incarceration. *Garner v. Jones*, 529 U.S. at 251, 255, 120 S. Ct. at 1368, 1370, *California Dep't of Corr. v. Morales*, 514 U.S. at 509, 115 S. Ct. at 1603; *Weaver v. Graham*, 450 U.S. at 33, 101 S. Ct. at 967.

The fact that a prisoner does not have a vested right to be paroled[19] is not relevant in an ex post facto analysis. *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995); *In re Jackson*, 703 P.2d at 108; *Johnson v. Commissioner of Corr.*, 786 A.2d 1091, 1099 (Conn. 2002). The analysis focuses on whether a statute, rule, or policy retroactively increases the punishment beyond what was prescribed when the underlying crime was committed. *Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 2451 (1987); *Weaver v. Graham*, 450 U.S. at 30, 101 S. Ct. at 965. Persons have a right to fair warning of the penalties that may result from their actions. *Wheeler v. Tennessee Dep't of Corr.*, 36 S.W.3d 824, 828 (Tenn. Ct. App. 2000); *Smith v. Campbell*, 995 S.W.2d 116, 119 (Tenn. Ct. App. 1999). Accordingly, the Ex Post Facto Clauses provide a means of assuring that an individual

---

[19]*Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979); *Oliver v. State*, 169 Tenn. 320 322, 87 S.W.2d 566, 566 (1935).

receives fair warning of criminal statutes and the punishments they carry. *Weaver v. Graham*, 450 U.S. at 28-30, 101 S. Ct. at 964-65; *Hock v. Singletary*, 41 F.3d 1470, 1471 (11th Cir. 1995).

Every state has enacted statutes or issued rules or policies similar to Policy No. 502.02 that are designed to punish prisoners for violating prison disciplinary rules or to punish parolees for violating the terms of their parole. Frequently, depending on the seriousness of the offense or infraction, the punishment includes increasing the length of the offender's incarceration for his or her underlying conviction or postponing the date when the offender will become eligible to be considered for parole on his or her underlying conviction.[20] Many prisoners and parolees have challenged these statutes, rules, and policies on ex post facto grounds when they have the effect of increasing the length of their incarceration beyond what it would have been under the law as it was when they committed their underlying offense. Thus, Mr. Utley is not the first prisoner, not even the first Tennessee prisoner, to mount an Ex Post Facto Clause challenge to disciplinary policies that effectively increase the length of his underlying sentence.

The response of the various state and federal courts to these Ex Post Facto Clause challenges has been remarkably inconsistent, and the outcomes of many of these cases are irreconcilable. A number of courts have invalidated such statutes and rules on Ex Post Facto Clause grounds;[21] while others have upheld virtually similar statutes and rules.[22] However, two essential principles can now be gleaned from these cases. First, disciplinary penalties that increase a prisoner's punishment must be attributed to the prisoner's underlying conviction, not just to the new disciplinary offense or parole violation. *Johnson v. United States*, 529 U.S. at 701, 120 S. Ct. at 1801; *People v. Callejas*, 102 Cal. Rptr. 2d at 371.[23] Second, since the effect of violating the disciplinary rule is to increase the incarceration for the underlying conviction, the only relevant time for determining the adequacy of the notice to the prisoner of the possibility of increased punishment is the date on which the

---

[20]Some statutes or rules punish offenders by removing all parole eligibility. Others mandate the loss of accrued sentence credits; while others provide for the loss of the ability to earn sentence credits for a defined period of time. Still others, like Policy No. 505.02, postpone a prisoner's parole eligibility date.

[21]*See, e.g., Williams v. Lee*, 33 F.3d 1010, 1013-14 (8th Cir. 1994); *Fender v. Thompson*, 883 F.2d 303, 305-08 (4th Cir. 1989); *Beebe v. Phelps*, 650 F.2d 774, 776-77 (5th Cir. Unit A 1981); *Greenfield v. Scafati*, 277 F. Supp. 644, 646 (D. Mass. 1967); *People v. Callejas*, 102 Cal. Rptr. 2d 363, 369-71 (Ct. App. 2000); *Johnson v. Commissioner of Correction*, 786 A.3d at 1099-100; *Britt v. Chiles*, 704 So. 2d 1046, 1047-48 (Fla. 1997); *Garner v. Nelson*, 963 P.2d 1242, 1248-50 (Kan. Ct. App. 1998); *In re Forbis*, 57 P.3d 630, 634 (Wash. Ct. App. 2002).

[22]*See, e.g., United States v. Reese*, 71 F.3d 582, 585-91 (6th Cir. 1995); *Ewell v. Murray*, 11 F.3d 482, 485-88 (4th Cir. 1993); *Souza v. State*, 792 P.2d 289, 289-90 (Alaska Ct. App. 1990); *In re Ramirez*, 705 P.2d 897, 900-02 (Cal. 1985); *In re Winner*, 66 Cal. Rptr. 2d 333, 336-37 (Ct. App. 1997); *Gasper v. Gunter*, 851 P.2d 912, 916-19 (Colo. 1993); *Miller v. Mitchell*, 25 S.W.3d 658, 663-64 (Mo. Ct. App. 2000); *Lewis v. Class*, 565 N.W.2d 61, 63-66 (S.D. 1997). This court has employed different rationales to uphold these rules. *See, e.g., Bonner v. Tennessee Dep't of Corr.*, 84 S.W.3d 576, 579-82 (Tenn. Ct. App. 2001); *Smith v. Campbell*, 995 S.W.2d at 118-19; *Ogburn v. Tennessee Dep't of Corr.*, 983 S.W.2d 677, 679 (Tenn. Ct. App. 1998); *Rienholtz v. Bradley*, 945 S.W.2d 727, 730 (Tenn. Ct. App. 1996).

[23]For the purpose of applying U.S. Const, art. I, § 10, cl. 1, the courts may no longer employ the fiction that the punishment for the subsequent disciplinary offense that increases a prisoner's incarceration for an underlying conviction relates only to the subsequent offense and is somehow unrelated to the underlying conviction. *See, e.g., State ex rel. York v. Russell*, 180 Tenn. 515, 518, 176 S.W.2d 820, 821 (1944); *Wheeler v. Tennessee Dep't of Corr.*, 36 S.W.3d at 828-29.

prisoner committed the offense that led to the underlying conviction and incarceration.[24] This is the law that was annexed to the prisoner's underlying crime. *Weaver v. Graham*, 450 U.S. at 30, 101 S. Ct. at 965; *Williams v. Lee*, 33 F.3d at 1013; *Dyer v. Tennessee Dep't of Corr.*, No. M2001-01446-COA-R3-CV, 2002 WL 2023142, at *3 (Tenn. Ct. App. Sept. 5, 2002), *pet. reh. denied* (Tenn. Ct. App. Oct. 8, 2002), *perm. app. denied* (Tenn. Feb. 18, 2003); *Cavitt v. Tennessee Dep't of Corr.*, No. 01A01-9712-CH-00713, 1999 WL 236277, at *3 (Tenn. Ct. App. Apr. 23, 1999), *perm. app. denied* (Tenn. Oct. 11, 1999).

## V.

The pivotal question in this case is whether the law in existence when Mr. Utley committed the crimes that led to the sentences he is now serving put him on notice that the length of his incarceration for these sentences could be increased for violating prison disciplinary rules. In 1986, Tenn. Code Ann. § 40-35-501(h) put him on notice that his release eligibility date was "conditioned on . . . [his] good behavior" and that violation of disciplinary rules gave the Commissioner the discretion to "defer . . . [his] release eligibility date so as to increase the total amount of time . . . [he] must serve before becoming eligible for release status." Thus, there can be no dispute that in 1986, Tenn. Code Ann. § 40-35-501(h) put Mr. Utley on notice that the Commissioner possessed the discretionary authority to punish infractions of prison disciplinary rules by deferring his release eligibility date.

It is likewise undisputed that in 1986, when Mr. Utley committed his crimes, the Commissioner had exercised his discretion under Tenn. Code Ann. § 40-35-501(h) by adopting a policy limiting the punishment for infractions of disciplinary rules to punitive segregation and the loss of sentence credits. It was not until 1989 that the Commissioner modified the policy to increase the punishment for certain serious disciplinary infractions to include extending a prisoner's release eligibility date. Thus, the version of Policy No. 505.02 in existence when Mr. Utley committed his crimes did not provide that escaping from prison would extend his release eligibility date by twenty percent of his original maximum sentence or that committing an offense resulting in physical injury could extend his release eligibility date by as much as thirty percent of his original maximum sentence. What we must decide is whether the changes in Policy No. 502.02 after 1982 have any significance for the purpose of U.S. Const. art. I, § 10, cl. 1 or Tenn. Const. art. I, § 11. We hold that they do not.

The law "annexed" to Mr. Utley's 1986 crimes put him on notice that violations of prison disciplinary rules could prolong his incarceration. It also put him on notice that the Commissioner, in the exercise of his discretion, could punish disciplinary offenses by requiring offenders to remain in prison until their mandatory release date. Thus, by virtue of the 1986 version of Tenn. Code Ann. § 40-35-501(h), prisoners who violated disciplinary rules, depending on the seriousness of the infraction, ran the risk of serving their entire sentence in prison without ever becoming eligible to be considered for early release on parole.

---

[24]The date that the prisoner was convicted or sentenced is irrelevant in an Ex Post Facto Clause analysis. In cases like this one, the date the prisoner committed the subsequent disciplinary offense is likewise irrelevant insofar as an ex post facto claim is concerned, even though it may be quite relevant to a due process claim.

-11-

The versions of Policy No. 502.02 issued in 1982, 1986, 1989, and 1996 amount to nothing more than an exercise of the Commissioner's discretion to set the punishment for disciplinary offenses. These policies provide a framework for the exercise of the Commissioner's discretion under Tenn. Code Ann. § 40-35-501(h). Even though the 1989 and 1996 versions of Policy No. 502.02 provides for harsher penalties than the 1982 and 1986 versions of the policy, the penalties in the 1989 and 1996 versions remain less than the maximum penalties authorized by Tenn. Code Ann. § 40-35-501(h). Because the penalties in the 1982, 1986, 1989, and 1996 versions of the policy are less severe than the maximum penalties authorized by Tenn. Code Ann. § 40-35-501(h), none of the policies implicate either U. S. Const. art. I, § 10, cl. 1 or Tenn. Const. art. I, § 11.

The constitutional prohibitions against ex post facto laws do not extend to every change in law that may work to a prisoner's disadvantage, *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S. Ct. 2290, 2298 (1977), especially changes to guidelines intended to provide a framework for the Commissioner's exercise of pre-existing statutory discretion. They are likewise not intended to require the courts to micromanage the numerous adjustments in policies needed to preserve internal order and discipline in prison. When Mr. Utley committed his crimes in 1986, he knew that violations of the prison disciplinary rules could put him at risk of serving a longer period of time before becoming eligible to be considered for parole. Accordingly, neither the 1989 nor the 1996 changes in Policy No. 502.02 deprived him of a pre-existing right or enhanced the punishment for his 1986 crimes beyond the punishment authorized by Tenn. Code Ann. § 40-35-501(h). Therefore, applying the 1989 and 1996 versions of Policy No. 502.02 to him for disciplinary offenses committed in 1989 and 1997 does not run afoul of the federal or state Ex Post Facto Clauses. *See Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S. Ct. 714, 715 (1980) (Rehnquist, Circuit J.).

## VI.

We affirm the judgment dismissing Mr. Utley's complaint for failure to state a claim upon which relief can be granted and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Jeff Utley for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE