IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2003

## TONY BALDWIN v. TENNESSEE BOARD OF PAROLES, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 01-2533-I     Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2002-01428-COA-R3-CV - Filed August 15, 2003**

_____

A prisoner in the custody of the Tennessee Department of Correction became eligible for parole after serving over twenty years of his sentence. The Parole Board conducted a hearing, and voted to deny him parole. They also decided to defer further parole consideration for another twenty years. The prisoner filed a Petition for Writ of Certiorari, which the trial court denied. We reverse the deferral, because we find that the decision to defer further parole consideration for so many years constitutes an arbitrary exercise of the Parole Board's authority.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Tony Baldwin, Tiptonville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Hudson, Senior Counsel, for the State of Tennessee.

**OPINION**

### I. A PAROLE HEARING

Tony Renee Baldwin was convicted of first degree murder in January of 1979, and was sentenced to life imprisonment. At the time of his conviction, a prisoner sentenced to life became eligible for parole after serving thirty years. The application of sentence reduction credits had the potential to accelerate his parole eligibility to a still earlier date.

Mr. Baldwin became eligible for parole in 2001. The Parole Board conducted a hearing on January 31 of that year. Three members of the Board initialed the document declining to release him on parole, checking off the seriousness of his offense as their reason. Their "Notice of Board

Action" also indicated that Mr. Baldwin's next parole hearing would not take place until February, 2021. No reason was given for deferring the next hearing for so long a period of time.

The prisoner filed an administrative appeal, in which he cited several alleged procedural errors in the conduct of the original hearing. His appeal was denied. On August 13, 2001, he filed a Petition for Writ of Certiorari in the Chancery Court of Davidson County.

Mr. Baldwin's Petition alleged that the Board had violated the ex post facto clause by not granting him the annual review hearings that were mandated by the rules of the Board of Paroles at the time of his sentencing. He also claimed that it was arbitrary for the Board to use "Seriousness of Offense" as a reason for denying him parole, especially in view of his alleged rehabilitation and good institutional record. The Board filed a Motion to Dismiss.

The Chancery Court agreed with the Board. The court cited *California Dept. of Corrections v. Morales*, 514 U.S. 499 (1995) as authority for the proposition that "a change in the timing of parole hearings to the possible detriment of a prisoner sentenced is not a violation of the Ex Post Facto Clause." The court also found that Mr. Baldwin did not set forth any set of facts showing that the Board had acted illegally, fraudulent or arbitrarily. The Motion to Dismiss was accordingly granted. This appeal followed.

## II. THE SERIOUSNESS OF THE OFFENSE

The Tennessee Legislature has specifically required the Board of Paroles not to grant parole to a prisoner if it finds that "[t]he release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect of the law." Tenn. Code Ann. § 40-35-503(b)(2). *See also* Rules of the Board of Paroles No. 1100-1-1-.06(1)(a) and (3)(b).

This court has previously ruled on several challenges to the above statute. The petitioners in those cases have argued that since the seriousness of the crime has already been factored into their sentence, declining parole on the same basis amounts to double jeopardy. *Dyer v. Tennessee Bd. of Paroles*, No. M1999-00787-COA-R3-CV (Tenn. Ct. App. April 23, 2001); *Mosley v. Tennessee Board of Paroles,* No. 01-A-01-9604-CH-00162 (Tenn. Ct. App. Nov. 1, 1996).

Although some courts in other jurisdictions have agreed with that argument, we have rejected it, and so has the Tennessee Supreme Court. In *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 482 (Tenn. 1997), our Supreme Court held that when the Parole Board declines parole because of the seriousness of the offense, it is not imposing another punishment for the same crime, but simply perpetuating a validly imposed sentence. Thus, Mr. Baldwin's argument as to the grounds for denying him parole is without merit.

## III. THE EX POST FACTO ARGUMENT

-2-

Ex post facto laws are forbidden under both the U.S. and Tennessee Constitutions. U.S. Const., art.1, §§ 9 and 10; Tenn. Const. art. I, sec. 11. The Tennessee Supreme Court has defined one type of ex post facto law as that which "changes punishment or inflicts a greater punishment than the law annexed to the crime when committed." *Miller v. State,* 584 S.W.2d 758, 761 (Tenn. 1979).

Mr. Baldwin is arguing that the rules of the Board of Paroles in effect at the time of his sentencing are annexed to his sentence, and that any change in those rules amounts to an ex post facto violation as to him. Prior cases of this court have made it clear that most penal regulations are not annexed to a prisoner's sentence, and thus that changes in those regulations do not normally implicate the ex post facto prohibition. These include rule changes involving the classification of prisoners, *Jaami v. Conley,* 958 S.W.2d 123 (Tenn. Ct. App. 1997) and disciplinary procedures, *Smith v. Campbell*, 995 S.W.2d 116 (Tenn. Ct. App. 1999).

Changes to the Rules of the Board of Paroles are more problematic, because in some cases they can directly affect the actual term of confinement that a prisoner must serve. *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn. Ct. App. 1995). But the procedures the Board must follow (as opposed to the standards for granting parole) are not usually considered a part of law annexed to the crime. When prisoners claim that changes to those procedures constitute an ex post facto violation, "[d]eterminations of these claims are usually made on a case-by-case basis. The outcome depends on the significance of the right involved and the significance of the impairment. In close questions, the decisions often times hinge on such subtle factors as the court's sense of fair play and justice." 912 S.W.2d at 732.

## A. THE *MORALES* CASE

While there are many similarities between *California Dept. of Corrections v. Morales*, supra, and the case before us, the differences are significant enough to prevent us from adopting the reasoning of the trial court and automatically extending the result in the California case to Mr. Baldwin's situation. In the *Morales* case, the appellant received a sentence of fifteen years to life for the 1980 murder of his wife. The law in existence at the time of his sentencing required the California Parole Board to conduct annual reviews of his suitability for early release, once he became eligible for parole.

The California legislature amended the law in 1981, to permit the Board to defer subsequent parole hearings for up to three years for certain classes of offenders, including murderers. Mr. Morales became eligible for parole in 1990. After a hearing, the Board declined to grant him parole, and scheduled his next hearing for three years subsequent, pursuant to the amended statute. Morales filed a habeas corpus petition in Federal District Court, arguing that the application of the amended statute to him was a violation of the ex post facto clause.

The Federal District Court denied his petition, but the U.S. Court of Appeals for the Ninth Circuit reversed. The Unites States Supreme Court took certiorari to determine if the challenged

statute retroactively increased "the quantum of punishment" imposed on the offender. The Court's determination that it did not resulted from a close examination of the statute, and of its likely effect on the prisoner's chance for parole.

The Court ruled that a change in parole procedures did not automatically implicate ex post facto concerns, but its opinion leaves the possibility open that changes of a sufficient magnitude to lengthen a prisoner's expected term of actual confinement could constitute an ex post facto violation. The Court noted that the focus of the California amendment was "to relieve the [Board] from the costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no reasonable chance of being released." The Court noted also that the Board's authority under the amendment was carefully tailored to that end, and that it was required to conduct a full hearing, review all relevant facts, and state the bases of its finding. In light of these considerations, the Court concluded that the legislation at issue "creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes," and that it did not therefore violate the ex post facto clause.

## B. THE PRESENT CASE

When Mr. Baldwin was sentenced, the rules of the Tennessee Parole Board provided that if a prisoner was denied parole, "a future hearing date shall be specified to be within one year of the current hearing." In 1992, that rule was amended so that if parole was denied, "a future hearing date shall be specified." It appears to us that the amendment is a procedural change. It is not facially unconstitutional, and thus Mr. Baldwin is not entitled to the annual parole hearings that were mandated by the earlier version of the rule.

It can be argued, however, that the amended rule was applied to Mr. Baldwin in an unconstitutional way, and that deferring further parole consideration for twenty years does amount to an ex post facto violation. But it is a fundamental principle that courts should decide constitutional issues only when it is absolutely necessary to do so. *State v. Taylor*, 70 S.W.3d 717 (Tenn. 2002). Since this case can be decided by reference to the standards underlying the Writ of Certiorari, we do not believe it necessary to reach the constitutional question.

## IV. AN ARBITRARY DECISION

The grant of parole is a discretionary matter, vested exclusively in the Board of Paroles. *Doyle v. Hampton,* 340 S.W.2d 891 (Tenn. 1960). Decisions of the Board are not reviewable by the courts, if done in accordance with the law. Tenn. Code Ann. § 40-28-115(c); *Flowers v. Traughber*, 910 S.W.2d 468 (Tenn. Crim. App. 1995). The question of whether such decisions are lawful is subject to limited review, however, under the common law Writ of Certiorari.

As we have stated on many occasions, the scope of review under the writ is limited to an examination of whether the Board exceeded its jurisdiction, or acted illegally, fraudulently or arbitrarily. *Turner v. Tennessee Board of Paroles*, 993 S.W.2d 78 (Tenn. Ct. App. 1999); *Powell*

*v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn. Ct. App. 1994); *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981).

Both versions of the rule at issue state that "if the case is continued or parole denied, a future hearing date shall be specified," with the one year requirement deleted from the amended rule. The state's argument implies that the amended rule grants the Board absolute and unbridled discretion over the timing of subsequent hearings. It appears to us, however, that the statutes relating to the Board of Paroles do not support this interpretation.

Tenn. Code Ann. § 40-28-116(a)(1) establishes the right of the Board of Paroles over prisoner release: "The board has the power to cause to be released on parole any person who has been declared eligible for parole consideration by the board."[1] Further, "[i]t is also the duty of members of the board to study the prisoners confined in the prisons, workhouses and jails when they are eligible for parole consideration so as to determine their ultimate fitness to be paroled." Tenn. Code Ann. § 40-28-118(d).

The grounds for parole are set out in Tenn. Code Ann. § 40-28-117, which reads in part,

> (a) Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that such prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society . . . .

Tenn. Code Ann. § 40-35-503(b)(2) and (3) set out grounds for declining parole because of the detrimental effects of releasing the prisoner "at the time." The thrust of these statutes, and indeed of the whole concept of parole, is that over time people can change, and that even a convicted felon may be able to live in accordance with the law, if he or she is released before the end of his sentence. Further, the determination of when a prisoner is ready to be released is not an easy one, and the provision for periodic hearings gives the Board the opportunity to re-evaluate its own decisions. Finally, Mr. Baldwin implies that private conversations with the victims of his crime, conducted before his parole hearing, had a significant impact on the Board's decision. We venture to think it possible that even these victims may experience a change of heart at some point, and not insist on his continued incarceration.

We note that the seven Board members are appointed for staggered six year terms, after which they are eligible for (but not necessarily entitled to) reappointment. Tenn. Code Ann. § 40-28-103(c). Thus the effect of the twenty-year deferral is not only to preclude reconsideration of Mr.

---

[1] In actuality, the calculation of initial parole eligibility is a function of the Department of Correction. *See* Board of Paroles Rule No. 1100-1-1-.07(1)(b). However, the Board is empowered to schedule subsequent hearings in accordance with its rules.

Baldwin's case by the members of the panel that declined to parole him, or by the other members of the current Board, but also to prevent the members of the Board that may be sitting in the years 2005, 2010, 2015 or 2020 from even making an initial consideration of whether Mr. Baldwin could be a suitable candidate for parole. Under the panel's ruling, it is possible that the entire membership of the Board can completely turn over more than once before his case comes up for decision once again.

It appears to us that the Board's decision constitutes an arbitrary withdrawal of the power to parole from future Board members, and that a twenty-year deferral would undermine the very provisions of the parole statutes that empower the Board to grant parole. In addition, the essential effect of the Board's action is to change Mr. Baldwin's sentence to life without parole, contrary to what the Legislature intended. We think Mr. Baldwin has stated a cause of action which entitles him to the writ of certiorari. Therefore, we reverse the chancellor's order dismissing his claim that the Board acted arbitrarily in deferring the next consideration of parole for him for twenty years.

## V.

The order of the trial court is reversed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee, the Tennessee Board of Paroles.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

-6-