# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### ASSIGNED ON BRIEFS APRIL 21, 2011

## LARRY HENDRICKS v. TENNESSEE BOARD OF PROBATION & PAROLE

**Direct Appeal from the Chancery Court for Davidson County**
**No. 09-548-I      Claudia C. Bonnyman, Chancellor**

_____

**No. M2010-01651-COA-R3-CV - Filed May 25, 2011**

_____

Petitioner filed a petition for writ of certiorari alleging that the Tennessee Board of Probation and Parole acted arbitrarily and illegally in denying him parole. After reviewing the record, the chancery court concluded that the Board acted lawfully, and it dismissed the petition. Petitioner appeals, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Larry Hendricks, Nashville, Tennessee, *pro se*

Robert E. Cooper, Jr., Attorney General and Reporter, Kellena A. Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Board of Probation & Parole

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

In 1987, Larry Hendricks was arrested and charged with the aggravated rape and first degree murder of Grace Young, who was five months old at the time of her death. Hendricks pled guilty to second degree murder in order to avoid the possibility of receiving a death sentence. He was sentenced to life in prison.

After serving twenty years, Hendricks had his first parole hearing before the Tennessee Board of Probation and Parole ("the Board") on October 1, 2008. Following the hearing, the Board declined parole for Hendricks, finding that "[t]he release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote disrespect for the law." The Board set Hendricks' next parole hearing for October of 2014.

Hendricks unsuccessfully appealed the Board's decision, and then he filed a petition for writ of certiorari in the chancery court of Davidson County. The chancery court granted the writ with no opposition from the Board, and the Board filed the administrative record with the court. After reviewing the record, the chancery court dismissed Hendricks' petition, finding that the Board acted lawfully in reaching its decision. Hendricks timely filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

Hendricks' brief lists the following issues, slightly restated, for review on appeal:

1. Whether the Board's consideration of a prior statement made by a co-defendant was improper and unconstitutional;
2. Whether the Board acted arbitrarily in denying future parole consideration based solely on the seriousness of the offense; and
3. Whether the Board arbitrarily deferred the next parole hearing for six years in violation of the *Baldwin* decision.

For the following reasons, we affirm the decision of the chancery court.[1]

---

[1] Hendricks' brief is difficult to follow, and it mentions various other issues throughout his discussion. However, he only lists these three issues for review on appeal, and most of the other issues he mentions were not raised in the chancery court. Therefore, we will limit our review to these three "issues

(continued...)

## III. STANDARD OF REVIEW

Release on parole is a privilege, not a right. Tenn. Code Ann. § 40-35-503(b). "The entity empowered with the discretion and authority to determine whether an inmate will receive parole is the Board of Probation and Parole, not the judiciary." *Harris v. Tenn. Bd. of Probation & Parole*, No. M2009-01904-COA-R3-CV, 2010 WL 3219491, at *3 (Tenn. Ct. App. W.S. Aug. 13, 2010) (citing *Brown v. Tenn. Bd. of Probation and Parole*, No. M2005-00449-COA-R3-CV, 2007 WL 2097548, at *1 (Tenn. Ct. App. July 6, 2007); *Baldwin v. Tenn. Bd. of Paroles*, 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003)). "The grant of parole is a discretionary matter, vested exclusively in the Board of Paroles." *Baldwin v. Tenn. Bd. of Paroles*, 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003) (citing *Doyle v. Hampton*, 207 Tenn. 399, 340 S.W.2d 891 (1960)). As such, the Board's decision is not reviewable by the courts if done in accordance with the law. *Id.* (citing Tenn. Code Ann. § 40-28-115(c); *Flowers v. Traughber*, 910 S.W.2d 468 (Tenn. Crim. App. 1995)). The question of whether the Board's decision was lawful is subject to limited review, however, under the common law writ of certiorari. *Id.* Under the common law writ of certiorari, the decision of the Board may be reviewed to determine whether the Board has exceeded its jurisdiction or has acted illegally, fraudulently, or arbitrarily. *Turner v. Tenn. Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999) (citing *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871 (Tenn. Ct. App. 1994)). However, "[t]he intrinsic correctness of the Board's decision is not reviewable under the writ." *Id.* (citing *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478 (Tenn. 1997)). In other words, "it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached." *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). If the Board reached its decision in a constitutional or lawful manner, then the decision is not subject to judicial review. *Id.*

---

[1](...continued)
presented for review." "With the exception of issues involving the subject matter jurisdiction of the trial and appellate courts, appellate review 'generally will extend only to those issues presented for review.'" *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009) (quoting Tenn. R. App. P. 13(b)). "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review and an issue not included is not properly before the Court of Appeals." *Petty v. City of White House*, No. M2008-02453-COA-R3-CV, 2009 WL 2767140, at *3 (Tenn. Ct. App. Aug. 31, 2009) (citations omitted).

## IV. DISCUSSION

### A. Statements of a Co-defendant

First, we will consider Hendricks' argument that the Board improperly considered statements previously made by a co-defendant, Angela Young,[2] when determining whether to grant him parole. Prior to Hendricks' parole hearing, the District Attorney General's office sent a "Letter of Opposition" to the Board, expressing its opinion that Hendricks should not be released on parole. Several items were included along with the letter for the Board's consideration, including newspaper articles from 1987 regarding the crime, the report prepared by the Memphis Police Department regarding the incident, the transcript of the guilty plea proceedings from 1988, and photographs of the five-month-old victim's body that were taken at the hospital. The MPD investigator's report recounted statements made by the child's mother, co-defendant Angela Young, after the child was pronounced dead at the hospital, in which she described the mistreatment endured by the child at the hands of Hendricks and Young in the months prior to her death. During the course of Hendricks' parole hearing, one of the Board members asked the following question of Hendricks:

> You being mindful of the fact that Mr. Hill [another Board member] and I both have read the facts of the offense that are contained in your file. We both have read the statement that was made by Angela Young in regard to what happened in the death of this young girl, and it appears to me, in my review of what happened, that you, along with Angela – Angela Young – systematically and brutally tortured this young girl, this infant, until she died. Now, is my statement correct or incorrect, sir?

On appeal, Hendricks argues that it was improper for the Board to consider Angela Young's statements because he was "under the impression the statement had been suppressed and stricken from the record by Judge Walter Kurtz in February 1988." Hendricks argued in his petition for writ of certiorari that "[w]hen Judge Kurtz ordered the testimony stricken from the record he meant all records." We note that there is nothing in the record to support Hendricks' assertion regarding this issue. He concedes, however, that in 1990, the Court of Criminal Appeals ruled that the trial court had erred and that the statement at issue was admissible.

When considering whether an inmate will live and remain at liberty without violating the law or the conditions of parole, the Board may consider numerous factors, including, but not limited to, the "nature of the crime and its severity," the views of the district attorney

---

[2] Angela Young was the mother of the five-month-old victim and Hendricks' girlfriend at the time.

general who prosecuted the case, the views of the community, victims of the crime or their family, and other interested parties, and any other factor that the Board determines to be relevant. Tenn. Comp. R. & Regs. § 1100-01-01-.06(1) (2008). "In applying the above factors to a particular resident, the Board will consider . . . [a]ny relevant information submitted by the inmate, his/her attorney, representatives on his behalf, or other interested persons." Tenn. Comp. R. & Regs. § 1100-01-01-.06(2) (2008). "The Board is allowed wide discretion, not subject to the rules of evidence, to consider evidence, information, or documentation that it considers helpful in carrying out its functions." *Livingston v. State of Tenn. Bd. of Paroles*, M1999-01138-COA-R3-CV, 2001 WL 747643, at \*12 (Tenn. Ct. App. July 5, 2001). Thus, we find that the Board did not act illegally in considering the statements contained in the investigator's report when deciding whether to grant parole to Hendricks.

On appeal, Hendricks also attempts to argue that the consideration of Angela Young's statements during his parole hearing violated his Sixth Amendment right of confrontation. We find nothing in the record to indicate that Hendricks raised this issue before the chancery court,[3] so we will not consider it for the first time on appeal.

## B. Seriousness of the Offense

As previously noted, the Board found that granting parole to Hendricks at this time "would depreciate the seriousness of the crime of which the offender stands convicted or promote disrespect for the law." One of the Board members stated during the parole hearing that this was the "most atrocious" crime that he had seen. Tennessee Code Annotated section 40-35-503 expressly provides that "no inmate convicted shall be granted parole if the board finds that: . . . [t]he release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law[.]" Although Hendricks' argument on appeal is somewhat unclear, he appears to argue that there was no evidence to support the Board's decision to deny parole based on the seriousness of the offense, and therefore, he was denied due process. We find this argument utterly devoid of merit. The Board must consider the seriousness of the offense when making its decision in order to comply with the aforementioned statute, and "the denial of parole on the basis of this factor does not raise any constitutional issues." *Turner*, 993 S.W.2d at 81. Again, this Court will not review the intrinsic correctness of the Board's decision, *id.*, but we can say without hesitation that there is no merit in Hendricks' suggestion that there was no evidence to support the Board's decision regarding the seriousness of his offense.

---

[3] This argument was not presented in Hendricks' petition for writ of certiorari. In addressing the issue of Young's statement, the chancery court's order found that the statement was later found to be admissible by the Court of Criminal Appeals, and it noted that Hendricks had not presented any other argument that might prevent the Board from considering her statement.

### C. Deferral of Hearing for Six Years

"Determining when to set a rehearing date following a denial of parole is a fact-intensive inquiry and we are not permitted to second guess the intrinsic correctness of the Board's decisions." *Turner v. Tenn. Bd. of Probation & Parole*, No. M2009-01908-COA-R3-CV, 2010 WL 3928617, at *3 (Tenn. Ct. App. Oct. 6, 2010) (citing *Powell*, 879 S.W.2d at 873). On appeal, "our review is limited to whether the Board lawfully exercised its discretion." *Id.* (citing *Harris*, 2010 WL 3219491, at *4). Here, the Board set Hendricks' next parole hearing for October 2014, six years after his initial hearing. Hendricks argues that this decision was unlawful based upon *Baldwin v. Tenn. Bd. of Paroles*, 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003), wherein the Court held that the Board's decision to defer further parole consideration for 20 years constituted an arbitrary exercise of the Board's authority. The Court explained that the provision allowing for periodic parole hearings gives the Board the opportunity to re-evaluate its own decisions, and that deferring parole consideration for 20 years would effectively withdraw the power to parole from future Board members. *Id.* at 434. Board members are appointed for staggered six year terms, after which they are eligible for (but not necessarily entitled to) reappointment. *Id.* (citing Tenn. Code Ann. § 40–28–103(c)). "Thus the effect of the twenty-year deferral [was] not only to preclude reconsideration of Mr. Baldwin's case by the members of the panel that declined to parole him, or by the other members of the current Board, but also to prevent the members of the Board that [would] be sitting in the years 2005, 2010, 2015 or 2020 from even making an initial consideration of whether Mr. Baldwin could be a suitable candidate for parole." *Id.* In other words, "it [was] possible that the entire membership of the Board [could] completely turn over more than once before his case [came] up for decision once again." *Id.* This result, the Court concluded, would "undermine the very provisions of the parole statutes that empower the Board to grant parole." *Id.*

Since *Baldwin* was decided, we have reviewed numerous other deferrals of parole hearings. This Court affirmed deferrals for five years in *Gordon v. Tenn. Bd. of Probation & Parole*, No. M2006-01273-COA-R3-CV, 2007 WL 2200277, at *4 (Tenn. Ct. App. W.S. July 30, 2007) and in *Berleue v. Tenn. Bd. of Probation & Parole*, No. M2005-00363-COA-R3-CV, 2006 WL 1540255, at *4 (Tenn. Ct. App. W.S. June 5, 2006), and we affirmed deferrals for six years in *Turner*, 2010 WL 3928617, at *3, and in *York v. Tenn. Bd. of Probation and Parole*, No. M2005-01488-COA-R3-CV, 2007 WL 1541360, at *6 (Tenn. Ct. App. W.S. May 25, 2007). Nevertheless, Hendricks argues on appeal that deferring his parole hearing for six years is impermissible under *Baldwin*. He claims that the longest of the Board members' remaining staggered terms expires in April 2014, and therefore, "the full Board is subject to turn over before [his] next parole hearing in October 2014." Hendricks argued before the chancery court that, according to *Baldwin*, the longest permissible deferral of his next parole hearing was sixteen months. Essentially, Hendricks appears to be arguing

that he must be given another parole hearing before the term of any current member of the Board expires, or immediately thereafter. This same mistaken argument was presented and rejected in *Harris v. Tenn. Bd. of Probation & Parole*, No. M2009-01904-COA-R3-CV, 2010 WL 3219491, at \*5 (Tenn. Ct. App. W.S. Aug. 13, 2010), where we explained:

> Mr. Harris interprets our decision in *Baldwin* as prohibiting any deferral of an inmate's next parole hearing beyond the expiration of the term of the Board member with the shortest time remaining in his or her current term. Pointing to four members of the current Board with remaining terms of sixteen, sixteen, eighteen, and twenty-one months, Mr. Harris argues that the three-year deferral in this case arbitrarily removes the ability of future Board members to make an initial determination of whether parole is appropriate. Accordingly, Mr. Harris argues that the maximum period for which the Board could defer future consideration in his case was sixteen months and that anything longer was arbitrary per se. This position is without merit. Even if each of the four aforementioned Board members is replaced at the conclusion of his or her term, the newest four members of the Board will have an opportunity during their term to consider whether parole of Mr. Harris is appropriate. The Board is not required, as the appellant suggests, to determine the next date of an inmate's parole hearing in every case as to ensure that potential replacements for current members will have an opportunity to immediately consider whether to grant parole to a particular inmate. This Court has considered and rejected the suggestion that lengthier periods of deferral were arbitrary under similar reasoning in several cases following *Baldwin*. [citations omitted]. We equally reject the suggestion here.

For the reasons stated in *Harris*, *Turner*, and *York*, we likewise find that the deferral of Hendricks' parole hearing for six years was not arbitrary and was permissible under *Baldwin*.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to the appellant, Larry Hendricks, for which execution may issue if necessary.

                                        _____
                                        ALAN E. HIGHERS, P.J., W.S.