FILED

NOV 0 2 2023

Clerk of the Appellate Courts
Rec'd By _____

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 2, 2023

## MARTIN WALKER v. TENNESSEE BOARD OF PAROLE

**Appeal from the Chancery Court for Davidson County**
**No. 21-0995-II      Anne C. Martin, Chancellor**

### No. M2023-00219-COA-R3-CV

This appeal arises from a Petition for Writ of Certiorari filed by Martin Walker ("Petitioner"), an inmate in the custody of the Tennessee Department of Correction ("TDOC"). Petitioner seeks review of the decision by the Tennessee Board of Parole ("Board") to deny him parole. He raises numerous challenges to the propriety of the Board's action and procedures. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and KRISTI M. DAVIS, JJ., joined.

Martin E. Walker, Nashville, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter, and Dawn Jordan, Special General, for the appellee, Tennessee Board of Parole.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

Petitioner is incarcerated on two convictions: First-degree murder of his father, committed on July 31, 1984, for which he was sentenced to life with possibility of parole, and second-degree murder of his wife, committed on May 31, 1980, for which he was sentenced to 25 years consecutive to the life sentence.[1] *See State v. Walker*, No. CCA 85-295-III, 1987 WL 1769 (Tenn. Crim. App. Sept. 29, 1987); *see also Walker v. State*, No. M2001-00328-CCA-R3CO, 2002 WL 517144 (Tenn. Crim. App. Apr. 5, 2002).

---

[1] His convictions occurred in 1985 and 1986, respectively.

- 1 -

His convictions were based in principal part on his admissions during a recorded conversation with a third party, during which he provided a description of the murders. He admitted that the purpose of the murders was to collect life insurance benefits. He also discussed his plan to kill his sister once he was able to take out an insurance policy on her.

Petitioner had eight parole hearings[2] prior to the commencement of this action. He was denied parole after each hearing based on "the seriousness of the offense." His last parole hearing prior to filing this Petition was in March 2021. Following the hearing, the hearing officer submitted a report recommending that the board deny parole given that Petitioner had killed two people in separate events and parole would depreciate the seriousness of the offenses.[3] On April 5, 2021, the remaining members of the hearing panel adopted the hearing officer's recommendation to deny parole. The stated reason for their decision was that Petitioner's release from prison "would depreciate the seriousness of the crime of which [Petitioner] stands convicted or promote disrespect of the law: T.C.A. 40-35-503(b)(2)."

On May 14, 2021, Petitioner appealed the hearing panel's decision to the entire Board. By letter dated August 27, 2021, the Board denied the appeal. Although the Board deferred future consideration of parole for four years, the record before us reveals that Petitioner has had two more parole hearings since he filed the Petition in this case: One in February of 2022 and another in February of 2023. As before, the Board denied parole after these hearings based on the seriousness of the Petitioner's offenses.

On October 1, 2021, Petitioner commenced this action by filing a Writ of Certiorari in the Chancery Court for Davidson County, Tennessee. In the statement of the case Petitioner stated:

> The petitioner has appeared before the Board a total of six (6) times over a twelve (12) year period. Both his academic and program participation had increased at each appearance; the petitioner has maintained an institutional record free of disciplinary infractions; he has had a pre-approved home and job plan at each appearance; has ample support in the community and has never had a single protestor to appear to oppose the grant. Despite the Board's

---

[2] The parole hearings occurred in 2009, 2015, 2016, 2017, 2018, 2019, 2020 and March 24, 2021, the last of which is the subject of this appeal.

[3] Tennessee Code Annotated § 40-28-105(d)(2) provides:

The chair of the board may designate individual members of the board of parole and appoint hearing officers who shall be authorized to conduct hearings, take testimony and make proposed findings of fact and recommendations to the board regarding a grant, denial, revocation or rescission of parole. The findings and recommendations shall be reduced to writing and reviewed by board members who shall adopt, modify or reject the recommendations.

2017 decision to grant parole, the petitioner has been denied release six (6) consecutive times. The Board has never presented any "reasonable justification" for these continual denials but has continually denied petitioner parole over and over again for the exact same reason, "seriousness of the offense."

The chancery court granted the writ and ordered the Board to file the administrative record with the court, including the audio recording from the March 24, 2021 hearing.

Following a review of the record, the petition and briefing, the chancery court dismissed the Petition pursuant to an order entered on January 19, 2023. Petitioner timely filed his Notice of Appeal on February 15, 2023.

## ISSUES

Petitioner has raised numerous issues for us to consider, which we find to be argumentative, convoluted and somewhat difficult to decipher. Thus, we have restated the issues, as we understand them, as follows:

1. Whether the Chancery Court and the Tennessee Board of Parole unlawfully expanded the definition of Tennessee Code Annotated § 40-28-105;

2. Whether the Chancery Court erred by not finding that the Board should grant parole because the requirement of four concurring votes had been met based on an accumulation of votes over the several hearings;

3. Whether the Board's decision was arbitrary and capricious;

4. Whether the Chancery Court erred by not finding a four-year deferral of Petitioner's next parole hearing arbitrary;

5. Whether the Chancery Court erred by not finding that the Board's voting practices were arbitrary and capricious;

6. Whether the Board's decision was erroneously based on an "Average Time Served" chart;

7. Whether the Chancery Court erred by not addressing the Board's "Decision Making Guidelines" which Petitioner contends fundamentally changed his parole eligibility;

8. Whether Petitioner was provided a complete record.

For its part, the Board raises several issues, most of which are related to those raised by Petitioner. They read:

1. Whether the Chancery Court properly found that there was sufficient evidence to deny parole based on the seriousness of the offense;

2. Whether Petitioner's arguments that Tenn. Code Ann. § 40-28-105 is unconstitutional and that the Chancery Court and the Board of Parole applied the statute in an unconstitutional manner are properly before this Court;

3. Whether the Chancery Court properly found that a potential parolee who has been convicted of First-Degree murder must receive 4 votes at one hearing, not over a span of years;

4. Whether the Chancery Court properly found that the alleged inconsistent voting practices of the Board of Parole Members did not show arbitrary or capricious behavior;

5. Whether the Chancery Court properly found that the Board of Parole could legally defer review of Petitioner's review for four years;

6. Whether the Petitioner has shown that the Board of Parole bases its decisions on an "Average Time Served Chart";

7. Whether the Chancery Court properly found that the Board of Parole properly denied parole regardless of the Decision-Making Guidelines;

8. Whether the Chancery Court properly found that Petitioner had been given a complete record;

9. Whether Tenn. Code Ann. § 40-28-117 provides Petitioner with any relief.

## STANDARD OF REVIEW

The common law writ of certiorari is the proper means by which to seek review of decisions made by prison disciplinary boards, parole eligibility review boards, and similar tribunals. *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The common law writ of certiorari has been used to remedy "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." *Id.*

Significantly, the decision of whether to grant or deny parole to an inmate is vested with the Board, not the courts. *See Hopkins v. Tenn. Bd. of Parole & Prob.*, 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001). Thus, judicial review of the Board's decision concerning parole is limited. *Id.*

> Judicial review of a parole decision made by the Board is narrow; it is limited to consideration of whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012); *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003). The reviewing court does not inquire into the intrinsic correctness of the Board's decision, reweigh the evidence, or substitute its judgment for that of the Board. *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008); *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001). The court considers only the manner in which the decision was made. *Stewart*, 368 S.W.3d at 463 (citing *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)).

*Brennan v. Tenn. Bd. of Parole*, 512 S.W.3d 871, 873 (Tenn. 2017).

As a consequence, "the courts will not use the common-law writ to grant relief when the Board's decision was arrived at in a constitutional and lawful manner." *Hopkins*, 60 S.W.3d at 82 (citing Tenn. Code Ann. § 40-28-115(c); *Arnold v. Tenn. Bd. Of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994))." We "review the Board's decision for rationality, and the Board's decision will be upheld unless the Board lacks a rational basis for its decision." *Greenwood v. Tenn. Bd. of Parole*, 547 S.W.3d 207, 220 (Tenn. Ct. App. 2017).

## ANALYSIS

We begin by noting that Petitioner is a *pro se* litigant. While he has the right to represent himself:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (internal citations omitted).

Parties proceeding without the benefit of counsel are "entitled to fair and equal treatment by the courts," nevertheless courts "must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). We must "be mindful of the boundary between fairness to a *pro se* litigant's adversary." *Id.* Furthermore, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009).

With this understanding, we shall now discuss the issues in the order set forth by the Board as listed above.

## I. DENIAL OF PAROLE BASED ON SERIOUSNESS OF THE OFFENSE

The Board contends that the chancery court properly found that there was sufficient evidence to deny parole based on the seriousness of the offense, which is not reviewable by the courts if the decision was reached in accordance with the law. *Baldwin v. Tenn. Bd. of Paroles,* 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003). Thus, the Board contends that their decision should be affirmed. Petitioner contends that the Board's decision should be reversed based on other grounds, which we discuss below.

It is well established that release on parole is a privilege, not a right. Tenn. Code Ann. § 40-35-503(b). An inmate has no right to a conditional release prior to the expiration of a valid sentence of confinement. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005) (citing *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Daniels v. Traughber*, 984 S.W.2d 918, 924 (Tenn. Ct. App. 1998); Tenn. Code Ann. § 40-35-503(b) (2003)). Instead, the grant of parole "is a discretionary matter, vested exclusively in the Board of Paroles." *Baldwin v. Tenn. Bd. of Paroles,* 125 S.W.3d 429, 433 (Tenn. Ct. App. 2003) (citing *Doyle v. Hampton,* 340 S.W.2d 891 (Tenn. 1960)). As such, the Board's decision is not reviewable by the courts if it was reached in accordance with the law. *Id.* (citing Tenn. Code Ann. § 40-28-115(c); *Flowers v. Traughber,* 910 S.W.2d 468 (Tenn. Crim. App. 1995)).

When making a parole determination, the Board may consider the relevant factors set forth in Tenn. Comp. R. & Regs. 1100-01-01-.07(1). The first of these factors is "The nature of the crime and its severity[.]" Tenn. Comp. R. & Regs. 1100-01-01-.07(1)(a). Moreover, Tenn. Code Ann. § 40-35-503, which was in effect at the time of the March 24, 2021 parole hearing, provided:

(b) Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:

(2)(A) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law…

Tenn. Code Ann. § 40-35-503(b)(2)(A) (effective July 1, 2019 to May 10, 2021).

Here, the Board expressly stated that it denied Petitioner parole on the ground that granting release "would depreciate the seriousness of the crime of which [Petitioner] stands convicted or promote disrespect of the law." Petitioner was convicted of two premeditated murders for insurance proceeds—two serious offenses—which constituted material evidence on which the Board relied in denying parole. *See Greenwood*, 547 S.W.3d at 217. As the Board correctly notes, the fact that Petitioner may have been a model prisoner, has a good record, and has support for his release does not entitle him to parole. *See Brennan v. Tennessee Board of Parole*, 512 S.W.3d 871, 876 (Tenn. 2017); *see also Hopkins v. Tennessee Board of Parole,* 60 S.W.3d 79, 83 (Tenn. Ct. App. 2001). While the Board may consider other factors, there is no mandate that it do so. *See Id.*

Thus, we conclude, as the chancery court did, that the Board was justified in denying parole based on the seriousness of the offenses for which Petitioner was incarcerated.

## II. TENNESSEE CODE ANNOTATED § 40-28-105

Petitioner contends that Tennessee Code Annotated § 40-28-105 is unconstitutionally vague and that the Board and the chancery court impermissibly interpreted the statute to require four votes for a grant of parole "at the same hearing." For its part, the Board contends that these issues are not properly before this court because they were not raised in the trial court. As the Board stated in its appellate brief, "While Petitioner did argue in the trial court that he had gotten the necessary votes over the years, he did not make these constitutional arguments."

We agree that Petitioner did not challenge the constitutionality of Tennessee Code Annotated § 40-28-105 in the trial court; thus, that argument is waived. "[Q]uestions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute at issue is so blatantly unconstitutional on its face as to obviate the necessity for any decision." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32–33 (Tenn. 2001) (citing *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)).

### III. DOES TENNESSEE CODE ANNOTATED § 40-28-105 REQUIRE AFFIRMATIVE VOTES TO BE CAST AT THE SAME HEARING

We will now address Petitioner's contention that the Board and the chancery court impermissibly interpreted Tennessee Code Annotated § 40-28-105 to require four votes for

- 7 -

a grant of parole "at the same hearing" or whether the votes could be accumulated from one hearing to the next.

While Tennessee Code Annotated § 40-28-105 sets forth the procedures that the Board must use for hearing certain matters and provides that certain felonies only require three votes, it is undisputed that the statute requires four affirmative votes for Petitioner's specific offenses. *See* Tenn. Code Ann. § 40-28-105(d).[4] Furthermore, subsection (d)(2) states that the hearing officers designated to conduct hearings make "recommendations to the board regarding *a* grant, denial, revocation, or rescission of parole." Tenn. Code Ann. § 40-28-105 (d)(2) (emphasis added). As the Board argues in its brief, "a", as it is used in the statute, indicates that each hearing is considered separately for "a" grant or denial. Thus, there are no "rollover" or "carryover" votes to the next parole hearing.

As the chancery court correctly determined, the unambiguous intent of Tennessee Code Annotated § 40-28-105(d) is for the votes to be cast at one hearing, not accumulated over multiple hearings. This conclusion is buttressed by the fact the members of the Board are appointed for staggered 6-year terms. *See* Tenn. Code Ann. § 40-28-103(b). Thus, a parolee who has been denied parole but who is granted a subsequent hearing two or more years later will appear before a Board that is comprised of different members. Thus, each parole hearing must be decided by members of the Board who are in office at the time of the hearing.[5] To allow a previous vote by a now former Board member to be counted in a subsequent hearing is not contemplated by the statute. Moreover, such a construction of the statute would lead to an absurd result, which we must avoid. *See Coffman v. Armstrong Int'l, Inc.*, 615 S.W.3d 888, 894 (Tenn. 2021) (quoting *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016) (The courts must avoid a statutory "construction that leads to absurd results.")).

Accordingly, the Board and the chancery court correctly determined that the votes necessary for parole—in Petitioner's case, four affirmative votes—must all be cast at the same hearing and they may not be accumulated from prior hearings.

## IV.    ARBITRARY VOTING PRACTICES

Petitioner contends he established a prima facie showing that some of the Board members had "Capriciously changed their voting stance from one hearing to the next without any reasonable justification or changes to appellant's institutional behavior or record." This contention is based on the representation that Board members Richard

---

[4] Pursuant to Tennessee Code Annotated § 40-28-105(d)(4): "The grant of parole involving the following offenses shall require the concurrence of four (4) board members: (A) First degree murder; . . . [and] (K) Second degree murder."

[5] Moreover, as the Board notes in its appellate brief, "The fact that the Board also makes decisions as to when the inmate will next be considered for parole further buttresses the fact that each hearing and each consideration are separate."

Montgomery, Roberta Kustoff, Tim Gobble, Gay Gregson and Barrett Rich voted 22 times in a 6-year period, during which Petitioner had 6 different parole hearings, and that those board members casted 9 votes during this period recommending Petitioner be granted parole. Based on these facts, petitioner claims the votes were "cast whimsically."

For its part, the Board responds stating "Despite any inconsistencies in the Board of Parole members' prior voting practices, the Board of Parole was required to consider the seriousness of the offense at the March 24, 2021 parole hearing and relied upon same to deny Petitioner parole, which it had the right to do. *See Arnold*, 956 S.W.2d at 482 (citing Tenn. Code Ann. § 40-35-503(b)(2))."

We begin our review of this issue by acknowledging, as stated above, that the decision of whether to grant or deny parole to an inmate is vested with the Board of Parole, **not the courts**. *Greenwood*, 547 S.W.3d at 213 (citing *Hopkins*, 60 S.W.3d at 82) (emphasis added). Further, the decision of a board will only be considered arbitrary in a common law writ of certiorari proceeding if it is determined that the record contains no evidence to support the decision. *Willis v. City of Memphis*, 457 S.W.3d 30, 39 (Tenn. Ct. App. 2014) (citing *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000)); *see also Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715 (Tenn. Ct. App. 2012).

Significantly, and as noted above, the seriousness of the offense constitutes material evidence on which the Board may rely when denying parole. *See Greenwood*, 547 S.W.3d at 217. Thus, despite perceived inconsistencies in the Board members' voting practices over the years, the Board was required to consider the seriousness of Petitioner's offenses at the March 24, 2021 hearing. *See Arnold*, 956 S.W.2d at 482 (citing Tenn. Code Ann. § 40-35-503(b)(2)). The record supports the finding that the Board did just that in deciding to deny Petitioner parole. Accordingly, we find no basis to overturn the Board's decision to deny parole following the March 2021 hearing, despite what appears to be inconsistent voting practices of some of the Board members over the years.

## V. DEFERRAL OF PAROLE HEARING FOR FOUR YEARS

Petitioner contends the Board's decision to defer his next available parole hearing for four years was arbitrary. More specifically, as he distinguishes the issue in his brief, he asked the chancery court to determine whether a 4-year deferral following three consecutive one-year denials and deferrals was arbitrary.

For its part, the Board insists this issue is moot because Petitioner has had two parole hearings since the March 24, 2021 hearing that gave rise to this petition. We agree.

A moot case is one that has lost its justiciability and no longer involves a present, ongoing controversy. *All. for Native Am. Indian Rights, Inc. v. Nicely*, 182 S.W.2d 383,

- 9 -

338–39 (Tenn. Ct. App. 2005) (internal citations omitted). A case is moot if there is no judicial relief to be afforded to the complaining party. *Id.* Here, the only relief that Petitioner sought with regard to this argument was an earlier parole hearing. As the Board states in their brief, "He got not just one, but two parole hearings within the span of two years." We agree. Thus, we find this issue is pretermitted on the basis of mootness.

## VI. "HIDDEN METHODOLOGY" BASED ON "AVERAGE TIME SERVED"

Petitioner contends that the Board utilizes a "hidden methodology" to determine parole releases. In support of this contention, he points to an "Average Time Served Chart," which the Board uses to make parole decisions. On appeal, Petitioner also contends that the chancery court misconstrued his claim by comingling or confusing the "Average Time Served Chart" with the "Tennessee Parole Release Decision Making Guidelines," which are utilized to determine an inmate's Release Eligibility Date ("RED"). Petitioner notes that the two reference guides are separate and distinct.

For its part, the Board contends there is nothing in the record to substantiate this claim other than "Petitioner's speculation." Instead, the Board insists that the record fully supports the finding that their decision was based on the determination that "[t]he release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote disrespect of the law: T.C.A. 40-35-503(b)(2)."

We agree with the Board on both counts. There is nothing in the record to substantiate the claim that the Board used a hidden or inappropriate methodology. Moreover, the record unequivocally supports the chancery court's finding that the Board's decision was based on the seriousness of the crimes that Petitioner committed: first-degree murder and second-degree murder.

Because we have determined that there is material evidence to support the Board's decision to deny parole, *see Greenwood*, 547 S.W.3d at 217, we find no merit to Petitioner's contention.

## VII. DECISION MAKING GUIDELINES

Petitioner contends the Board adopted Guidelines that exceed its authority because, as he states in his brief, the Guidelines "change a prospective parolee's sentence from that of Life *with* the possibility of parole to that of Life *without* [the possibility of parole] absent the consent and approval of the Tennessee State legislature." (emphasis in original). He also contends that the adoption of the Guidelines constitutes an *ex post facto* violation of his parole eligibility.

The Board counters, stating that, disregarding what the Guidelines say, "seriousness of the offense is not only a perfectly proper reason for the Board to deny parole, but is

required as a consideration[.]" The Board also notes that it has statutory authority to "develop and implement guidelines for granting or denying parole." Tenn. Code Ann. § 40-28-104(a)(3). Further, and relying on the decision in *Williams v. Tenn. Bd. of Prob. & Parole*, No. M2006-02336-COA-R3-CV, 2007 WL 3132935, at *3 (Tenn. Ct. App. Oct. 26, 2007), the Board insists that Tennessee Code Annotated § 40-35-503(b)(2) "does not affect parole eligibility date or denial of parole, but instead enumerates one reason which the parole board may elect, in its discretion, to deny parole." *Id.* (quoting *Dyer v. Tennessee Bd. of Paroles*, No. M1999-00787-COA-R3-CV, 2001 WL 401596, at *2 (Tenn. Ct. App. Apr. 23, 2001)).

It appears that the Board has used decision making guidelines since 1985. Petitioner complains about the portion of the Guidelines which state that

> It is not suggested that offenders who have been convicted of First-Degree Murder be released at first or subsequent hearings regardless of level of risk unless there is a documented justification for release consideration.

Petitioner further notes that this guideline is restated under the "Guideline Summary" as follows: "First Degree Murder: NO RELEASE at the first and subsequent hearing unless there is a documented justification of release consideration."

The Board argues that this guideline merely suggests the need for "a documented justification for release" and it does not add or detract from the Board's authority to grant or deny parole based on the seriousness of the offense. We agree.

As for the *ex post facto* issue, the constitutional prohibition against *ex post facto* laws is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (internal citations omitted). To constitute a violation of the prohibition against *ex post facto* laws, "a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, . . . by altering the definition of criminal conduct or increasing the punishment for the crime. . ..." *State v. Pruitt*, 510 S.W.3d 398, 416–17 (Tenn. 2016) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (internal quotations omitted)).

As it relates to sentencing, a law violates *ex post facto* laws if it "inflicts a greater punishment, than the law annexed to the crime, when committed." *Id.* at 411 (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)). The statutes and regulations governing parole eligibility are considered to be part of the law annexed to a crime when it is committed. *Utley v. Tenn. Dep't of Corr.*, 118 S.W.3d 705, 716 (Tenn. Ct. App. 2003) (citing *Weaver v. Graham*, 450 U.S. at 32–33; *Jaami v. Conley*, 958 S.W.2d 123, 125 (Tenn. Ct. App. 1997); *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn. Ct. App. 1995)).

Here, Petitioner was convicted of second-degree murder that he committed on May 31, 1980, and first-degree murder that he committed on July 31, 1984. At the time of his first-degree murder offense, Tenn. Code Ann. § 40-35-503(b)(2)(1982) provided:

> Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that . . . (2) The release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law.

*Williams v. Tenn. Bd. of Prob. & Parole*, No. M2006-02336-COA-R3-CV, 2007 WL 3132935, at *3 (Tenn. Ct. App. Oct. 26, 2007).

As the Board correctly states in its brief, Tenn. Code Ann. § 40-35-503(b)(2) "does not affect parole eligibility date or denial of parole, but instead enumerates one reason which the parole board may elect, in its discretion, to deny parole." *Id.* (quoting *Dyer v. Tennessee Bd. of Paroles*, No. M1999-00787-COA-R3-CV, 2001 WL 401596, at *2 (Tenn. Ct. App. Apr. 23, 2001)). Furthermore, in *Arnold v. Tennessee Board of Paroles*, 956 S.W.2d 478 (Tenn. 1997), our Supreme Court reasoned "that the denial of parole on the basis of this factor does not raise any constitutional issues." *Id.* (citing *Arnold*, 956 S.W.2d at 483). Therefore, the Board's stated reason for denial of "seriousness of the crime" under Tenn. Code Ann. § 40-35-503(b)(2) does not constitute an *ex post facto* violation.

## VIII.   THE AUDIO RECORDING FROM THE MARCH 24, 2021 PAROLE HEARING

Petitioner contends that he did not receive an "adequate" recording, comparable to the one provided to the chancery court, "*if different than the one he received.*" (emphasis added). He also states that the audio recording provided to the chancery court for its review may have been better than the recording that was provided to him.

We note, however, that while Petitioner alleges that the recording he received was inadequate, he has failed to establish that the recording provided to him was different from that which was provided to the chancery court. It appears that he is merely speculating that they were different. This is significant because the chancery court stated in its final order that the audio recording was "adequate for review of the parole board's decision." More importantly, Petitioner has failed to establish how the recording that he received has adversely impacted his ability to present his case to the chancery court or to this court.

Accordingly, we find no basis on which to conclude that Petitioner did not receive an adequate copy of the record or that the recording he received impaired his ability to present his case to the chancery court or to this court.

## IX.   THE COMPLETE RECORD FROM THE MARCH 24, 2021 PAROLE HEARING

- 12 -

Petitioner also contends that he did not receive all of the record. Specifically, he contends that the Board did not "afford the appellant any of these 'hearing summaries' compiled by hearing officials in any of the nine (9) hearings that he attended, which includes the March 24, 2021, hearing at issue." Petitioner goes on to state that "[t]his hearing summary was paramount to review because it records the hearing officer's thoughts and observations at the hearing and the reason(s) which justify his or her recommendation for or against parole."

With regard to this issue, the Board insists that Petitioner was provided with "the full panoply of materials that were available to him." More importantly, the chancery court noted in its final order that Petitioner was provided with the following:

> His parole hearing information for all his prior parole hearings, including the Board action sheet and summary report for the March 24, 2021 hearing, which includes the Hearing Officer's 'Recommendations' and the 'Conditions/Reasons' for same, as well as the other board members voted, were included in the non-confidential portion of the administrative record.

Based on the chancery court's express finding that Petitioner was provided with the record, including the hearing officer's "Recommendations," we hold that Petitioner received the records that he was entitled to receive. Thus, we find no merit to Petitioner's argument in regard to this issue.

## X.  WHETHER PETITIONER IS ENTITLED TO ANY RELIEF

Petitioner is incarcerated on convictions for first-degree murder of his father in 1984 and second-degree murder of his wife in 1980. As a result of these convictions, Petitioner was sentenced to life with possibility of parole for the first-degree murder and 25 years consecutive to the life sentence for the second-degree murder. *See State v. Walker*, 1987 WL 17609, at *1; *see also Walker v. State*, 2002 WL 517144, at *1.

Petitioner was afforded eight parole hearings prior to the commencement of this action and was denied parole each time based on the seriousness of the offense. Following the March 2021 hearing, the Board denied parole, stating that, "[t]he release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote disrespect of the law: T.C.A. 40-35-503(b)(2)." For the reasons stated above, we find no basis upon which to disturb the Board's decision or the decision of the chancery court.

Accordingly, we affirm the judgment of the chancery court.

- 13 -

## In Conclusion

Based on the foregoing, the decision of the chancery court is affirmed in all respects. Costs of appeal are assessed against the appellant, Martin E. Walker.

_____

FRANK G. CLEMENT JR., P.J., M.S.